Robert LOCK, Appellant

v.

CITY OF PHILADELPHIA and Police
Officer Christopher M. Lewis.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 27, 2006.
Decided March 27, 2006.

Robert A. Gelinas, Philadelphia, for appellant.

Alan C. Ostrow, Philadelphia, for appellees.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and LEAVITT, Judge (P.).

OPINION BY Judge LEAVITT.

Robert Lock appeals an order of the Court of Common Pleas of Philadelphia County (trial court) denying his motion for post-trial relief and entering judgment on a jury verdict awarding him $11,466 in damages. By his motion, which followed a trial on Lock's tort claim against the City of Philadelphia and Philadelphia Police Officer Christopher M. Lewis, Lock challenged certain evidentiary rulings by the trial court as well as the amount of the jury award for pain and suffering. We affirm.

This case arises from an automobile accident that occurred at the intersection of Margaret and Tackawanna Streets in the City of Philadelphia at approximately 3:05 a.m. on November 4, 2001. Both streets are limited to one-way travel. There are no traffic control devices on Margaret Street at the intersection; there is a stop sign on Tackawanna Street. At the time of the accident, Lock was driving west on Margaret Street and Officer Lewis was proceeding south on Tackawanna Street in pursuit of another vehicle. When Officer Lewis reached the intersection, he went through the stop sign and collided with the passenger side of Lock's vehicle, which was already in the intersection. Lock was taken to the hospital for treatment. Officer Donald Lindenmuth, an accident investigation officer, was dispatched to the hospital to obtain a sample of Lock's blood. Officer Lindenmuth arrived at the hospital at approximately 5:10 a.m. and detected a strong odor of alcoholic beverage on Lock's breath and observed that his eyes were glassy and his speech impaired. Lock's blood was drawn and submitted to DrugScan[1] for testing. The test revealed that Lock's blood alcohol content (BAC) was 0.134%. Lock was subsequently convicted of driving under the influence of alcohol.

Lock filed a civil complaint in October 2003 against the City and Officer Lewis, asserting that Officer Lewis negligently operated his vehicle by failing to obey the stop sign and by engaging in a high-speed pursuit without having his warning lights or siren activated. Lock sought damages for "serious and painful injuries," including pain and suffering, medical expenses, lost wages and loss of future earning capacity. The City contested liability and denied that Lock had suffered permanent loss of bodily function or permanent disfigurement.

On February 2, 2004, the trial court, by Judge Sandra Moss, entered a case management order directing the City to identify and submit *curricula vitae* and expert reports of all intended expert witnesses by August 2, 2004. The court scheduled a pre-trial conference for October 4, 2004, and further ordered the parties to file pre-

---

1. DrugScan is a private forensic toxicology laboratory that conducts blood tests for the Philadelphia Police Department. Reproduced Record at 388a–389a (R.R. ——).

trial memoranda fifteen days before the conference identifying, *inter alia*, all potential witnesses and all exhibits to be offered at trial.

Lock filed a motion in limine on October 22, 2004, seeking to preclude the City from offering any evidence pertaining to his consumption of alcohol on the night of the accident. Lock argued that such evidence was irrelevant and, alternatively, that under Pennsylvania Rule of Evidence 403 [2] the probative value of such evidence would be outweighed by its prejudicial effect on the jury. The parties then proceeded to a jury trial before Judge Victor J. DiNubile, Jr., on November 22, 2004.

At the commencement of trial, the trial court heard argument on Lock's motion in limine. The trial court precluded the City from introducing evidence of Lock's DUI conviction but decided to allow independent evidence of his alcohol consumption and blood alcohol content since it was relevant to the City's argument that Lock was contributorily negligent.

At trial, Lock testified that he attended a friend's wedding the evening before the accident, then went to a bar and a party before arriving home at his apartment at approximately 1:00 a.m. He received a call from his girlfriend shortly before 3:00 a.m. and was on his way to her apartment when the accident occurred. Lock has no memory of the accident itself, but he denied seeing flashing lights or hearing a siren as he approached the intersection.[3] Lock admitted that he consumed four or five beers at the wedding reception but claimed that he had nothing to drink after that. He

acknowledged that his blood alcohol content was above the legal limit.

Lock also offered the testimony of Joseph Muldoon, a transportation engineer and accident reconstruction expert, who inspected the accident site and reviewed the accident reports. Based upon his estimation of the speed of the two vehicles and typical reaction times, Muldoon posited that Lock could not have avoided the collision. Muldoon acknowledged that Lock's blood alcohol content registered 0.134% and that that concentration exceeded the legal limit of 0.10% prescribed by Pennsylvania law at the time of the accident. Muldoon opined that alcohol consumption was not a factor in this particular accident given the short reaction time available to Lock.

At the time of the accident, Lock was working approximately twenty hours per week as a suite attendant at the Wachovia Center in Philadelphia. He also worked part-time as a referee in youth sporting events. Lock is certified as an emergency medical technician, which is his long-term career goal. He is also a certified tree climber and worked for a landscaping company before accepting the position at the Wachovia Center. Lock testified that, as a result of his injuries, he has been unable to work as a referee or engage in the athletic pursuits he once enjoyed. He did, however, return to his pre-injury job at the Wachovia Center in April 2002, where he is currently employed. Lock stipulated that his lost wages from the Wachovia Center job totaled $3,320.

Lock testified regarding his injuries and the treatment he received following the

---

**2.** Rule 403 states, in pertinent part: "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...". PA.R.E. 403.

**3.** Lock presented the testimony of Felicia Jones, an independent eyewitness to the accident. Jones testified that she did not hear a siren and could not recall whether Officer Lewis' dome lights were activated.

accident. His stipulated medical expenses were $18,600. Lock exhibited to the jury a scar on his right knee that his attorney described for the record as "a quarter inch or half inch wide ... reddish in appearance." R.R. 132a. Lock stated that the scar does not cause him any pain. Dr. William H. Simon, Lock's orthopedic surgeon, testified that Lock sustained permanent cervical nerve damage and would be permanently restricted from performing overhead work and heavy pulling or lifting.

The City refuted Lock's medical evidence with testimony from two physicians, Dr. Bong S. Lee, an orthopedic surgeon, and Dr. Richard H. Bennett, a neurologist. Both of the City's physicians examined Lock and testified that his cervical injury was not permanent in nature, and that he had fully recovered and did not suffer a permanent loss of a bodily function. Dr. Lee acknowledged that Lock has a permanently disfiguring scar on his right knee.

Officer Lewis also testified on behalf of the City. He claimed that his warning lights and siren were activated at the time of the accident, although this testimony was partially contradicted by Lock's independent eyewitness, Felicia Jones, who claimed that she did not hear a siren. Officer Lewis admitted that he failed to obey the stop sign on Tackawanna Street as he entered the intersection, and that this constituted a violation of guidelines promulgated by the Philadelphia Police Department.

On the fourth day of trial, the City called as a witness Richard D. Cohn, Ph. D., a certified forensic toxicologist and laboratory director at DrugScan. As laboratory director, Dr. Cohn was responsible for preparing a toxicology report, dated November 19, 2001, indicating that Lock's blood alcohol content was 0.134% (Drug-Scan report). The DrugScan report also discussed the effects of that particular blood alcohol concentration on an "individual's alertness, sense of care and caution, perception, judgment, response time and coordination." R.R. 590a. The City did not offer the DrugScan report to Lock's attorney until after the third day of trial. Lock objected to Dr. Cohn's testimony and the report, arguing that the trial court's prior case management order had required disclosure of such evidence by August 2, 2004. The trial court precluded Dr. Cohn from testifying in an expert capacity regarding the legal significance of the observations contained in the DrugScan report. The court also precluded admission of the report itself. Dr. Cohn then testified regarding DrugScan's testing procedure and the chain of custody of Lock's blood sample. He reviewed the DrugScan report and verified that Lock's blood alcohol content measured 0.134%, and that at the time of the accident that concentration was above the legal limit prescribed by Pennsylvania law. Dr. Cohn testified that Lock's blood alcohol content at 5:10 a.m., when his blood was drawn, was not consistent with his claim that he had consumed four or five beers early in the evening before the accident.

The trial court instructed the jury to consider whether the City, through the conduct of Officer Lewis, was negligent and therefore liable for Lock's injuries. The jury was also instructed to consider whether Lock was contributorily negligent and, based on the foregoing findings, whether apportionment of liability was necessary. With respect to damages, the trial court instructed the jury to consider Lock's claims for (1) lost earnings and loss of future earning capacity, (2) medical expenses and (3) pain and suffering. The jury was further instructed that, under the Judicial Code, a plaintiff cannot recover damages for pain and suffering from a political subdivision unless he has proven a

permanent loss of bodily function or permanent disfigurement.[4]

The jury found that both Officer Lewis and Lock were negligent and apportioned liability at 50% for each party. The jury awarded Lock $3,320 on his claim for loss of earnings and future loss of earning capacity and $18,600 for medical expenses. These awards correlated with the stipulated amounts for lost wages and medical expenses. The jury also found that Lock had suffered either a permanent loss of bodily function or permanent disfigurement and awarded him $1,012 for pain and suffering. The trial court reduced the total award of $22,932 by 50%, resulting in a final verdict of $11,466 against the City. Lock filed a motion for post-trial relief, which was denied, and this appeal followed.

■ On appeal,[5] Lock raises several issues that may be summarized as follows: (1) whether the trial court erred by allowing the City to introduce evidence of his alcohol consumption and blood alcohol content, by way of the DrugScan report and Dr. Cohn's testimony; and (2) whether the jury's award of $1,012 for pain and suffering was inadequate.

Lock challenges, first, the trial court's decision to allow evidence that he had consumed alcohol prior to the accident, including evidence that his blood alcohol content registered 0.134%. Lock contends that such evidence was inadmissible because there was no evidence that he was unfit to drive or had driven recklessly or carelessly prior to the accident. Lock also believes this evidence was unduly prejudicial.

■ In reviewing Lock's claims, we are mindful that in evaluating an evidentiary ruling of a trial court our standard of review is extremely narrow. "The admission or exclusion of evidence is a matter within the sound discretion of the trial court, which may only be reversed upon a showing of a manifest abuse of discretion." *Potochnick v. Perry*, 861 A.2d 277, 282 (Pa.Super.2004) (quoting *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa.Super.2003)). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.* (quoting *Ettinger v. Triangle–Pacific Corp.*, 799 A.2d 95, 110 (Pa.Super.2002)).

■ Our appellate courts have previously considered the admissibility of evidence of a driver's alcohol consumption and blood alcohol content in civil litigation involving issues of contributory negligence. The well-settled rule that has been established by these cases is that "where reck-

---

**4.** Section 8553 of the Judicial Code provides, in relevant part:
(c) Types of losses recognized.—Damages shall be recoverable only for:
(1) Past and future loss of earnings and earning capacity.
(2) *Pain and suffering in the following instances:*
(i) death; or
(ii) *only in cases of permanent loss of a bodily function, permanent disfigurement* or permanent dismemberment *where the medical* and dental *expenses referred to in paragraph (3) are in excess of $1,500.*
(3) Medical and dental expenses including the reasonable value of reasonable and neces-

sary medical and dental services, prosthetic devices and necessary ambulance, hospital, professional nursing, and physical therapy expenses accrued and anticipated in the diagnosis, care and recovery of the claimant.
42 Pa.C.S. § 8553(c) (emphasis added).

**5.** This Court's standard for reviewing a trial court's denial of a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law which affected the outcome of the case. *Whyte v. Robinson*, 421 Pa.Super. 33, 617 A.2d 380, 382 (1992).

lessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is inadmissible as unfairly prejudicial, unless it reasonably establishes intoxication." *Whyte v. Robinson,* 421 Pa.Super. 33, 617 A.2d 380, 383 (1992). Blood alcohol content alone may not be admitted for the purpose of proving intoxication; there must be other evidence showing the actor's conduct. suggests intoxication. *Locke v. Claypool,* 426 Pa.Super. 528, 627 A.2d 801, 804 (1993). *See also Karchner v. Flaim,* 661 A.2d 928, 930 (Pa.Cmwlth.1995) (citing *Whyte* and *Locke* and upholding admission of evidence of blood alcohol content and alcohol consumption where corroborated by independent evidence of intoxication).

■ In the instant case, the record contains substantial independent evidence corroborating the City's allegation that Lock was intoxicated at the time of the accident. Most compelling was Lock's own admission that he had consumed four or five beers during the previous evening. Lock's accident reconstruction expert also acknowledged that his blood alcohol content was 0.134%. Officer Lindenmuth testified that when he arrived at the hospital approximately two hours after the accident, he detected a strong odor of alcoholic beverage on Lock's breath and observed that his eyes were glassy and his speech impaired.

In light of these indicia of intoxication, we conclude that the trial court properly admitted evidence of Lock's alcohol consumption and his blood alcohol content.

Lock also challenges the means by which the City introduced the foregoing evidence, namely the testimony of Dr. Cohn, whom Lock characterizes as a "surprise witness" who offered prejudicial testimony that Lock was not prepared to rebut. Lock contends that because Dr. Cohn was not identified as a witness until the third day of trial, his testimony should have been precluded under the Pennsylvania Rules of Civil Procedure governing discovery of expert testimony and identification of witnesses. Additionally, Lock asserts that the trial court, by permitting Dr. Cohn to testify, violated the prior case management order entered by Judge Moss. Finally, Lock argues that even if Dr. Cohn was a competent witness, he testified outside the scope of the DrugScan report and in violation of the trial court's own ruling prohibiting testimony on the effects of alcohol consumption. We find no merit to any of Lock's contentions.

■ We address, first, Lock's allegations that Dr. Cohn's testimony should have been precluded under Pennsylvania Rules of Civil Procedure 4003.5[6] and

---

**6.** Rule 4003.5 provides, in pertinent part, as follows:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

\* \* \*

(b) An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the

4007.4.[7] These rules require a party to disclose the identity of expert witnesses and the subject of their testimony during discovery and provide that an undisclosed expert witness may not testify absent extenuating circumstances beyond the control of the defaulting party.[8] Lock contends that the City violated the foregoing rules by failing to reveal Dr. Cohn's identity at any time prior to trial, and that he was prejudiced by Dr. Cohn's "surprise" testimony.

Lock's challenge under the procedural rules fails for several reasons. First, the trial court did not allow Dr. Cohn to offer expert testimony on the legal significance of Lock's 0.134% blood alcohol content.[9] Dr. Cohn's testimony was, in fact, quite limited. As the custodian of the DrugScan report, he was permitted to testify regarding the chain of custody of Lock's blood sample and the fact that his blood alcohol content measured 0.134%. This limited testimony comported with the trial court's ruling on Lock's motion in limine with respect to evidence of his blood alcohol content. For Lock to claim that he was prejudiced by this "surprise" testimony is disingenuous. Moreover, even if the rules cited by Lock were applicable here, we agree with the City that there were "extenuating circumstances" that justified Dr. Cohn's appearance in court. The trial court did not rule on Lock's motion in limine until the first day of trial. As a result, the City was not aware until that time that it would be precluded from offering evidence of Lock's DUI conviction, which would have been the best evidence of intoxication. It was therefore foreseeable that the City would present a witness to establish that crucial fact, with Dr. Cohn, as the lab director and custodian of the DrugScan report, being the obvious choice to authenticate the test results.

Lock argues, next, that the decision to allow Dr. Cohn to testify regarding the previously undisclosed DrugScan report constituted a violation of the case management order entered on February 2, 2004. In that order, Judge Moss ordered the

failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.
PA.R.C.P. No. 4003.5(a)(b).

7. Rule 4007.4 provides, in pertinent part, as follows:
A party or an expert witness who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters and the identity of each person expected to be called as an expert witness at trial, the subject matter on which each person is expected to testify and the substance of each person's testimony as provided in Rule 4003.5(a)(1).
PA.R.C.P. No. 4007.4(1).

8. Lock also cites PA.R.C.P. No. 4019(i), which states that "[a] witness whose identity has not been revealed [during discovery] shall not be permitted to testify on behalf of the defaulting party" absent extenuating circumstances. Rule 4019(i) is actually part of a list of sanctions available to a trial court for discovery violations. Its application here is questionable since the trial court was not presented with a motion for sanctions for discovery violations.

9. In fact, the trial court admonished the City's attorney that even though expert testimony may have been relevant to the legal significance of Lock's blood alcohol content, it was just "too late" to offer Dr. Cohn as an expert on that subject or to allow the contents of the DrugScan report into evidence. R.R. 342a, 378a–379a. The court noted that allowing such evidence would have constituted a violation of discovery rules.

City to "identify and submit *curriculum vitae and expert reports* of all expert witnesses intended to testify at trial not later than [August 2, 2004]." R.R. 630a (emphasis in original). Judge Moss' order also advised that "[c]ounsel should expect witnesses not listed [in pre-trial memoranda] to be precluded from testifying at trial." R.R. 631a. By permitting Dr. Cohn to testify, Lock contends that the trial court violated the coordinate jurisdiction rule. We disagree.

■■■ The coordinate jurisdiction rule refers to the long recognized principle that judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions. *Commonwealth v. Starr*, 541 Pa. 564, 573, 664 A.2d 1326, 1331 (1995). In *Starr*, our Supreme Court held that the coordinate jurisdiction rule "falls squarely within the ambit of a generalized expression of the 'law of the case' doctrine." *Id.* at 574, 664 A.2d at 1331. Therefore, in the context of that doctrine, the coordinate jurisdiction rule dictates that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of *a legal question* previously decided by the transferor trial court." *Id.* (emphasis added).

■■■ As the emphasized text makes clear, the coordinate jurisdiction rule applies only to decisions rendered upon legal questions. Judge Moss' order did not dispose of any substantive legal issues; it was, on its face, a case management order intended to facilitate this litigation by setting discovery deadlines. We disagree with Lock's contention that the coordinate jurisdiction rule is applicable to such an order. Moreover, assuming *arguendo* that the rule is applicable in this context, we would not interpret the language employed by Judge Moss as narrowly as Lock. While Judge Moss did direct the City to disclose

expert evidence by August 2, 2004, the sanction she contemplated for noncompliance was that "[c]ounsel *should expect* witnesses not listed ·to be precluded from testifying at trial." R.R. 631a (emphasis added). There was no absolute prohibition on such evidence, and the trial judge acted well within his broad discretion by allowing Dr. Cohn to testify.

Lock's final challenge to the trial court's evidentiary rulings concerns the scope of Dr. Cohn's testimony. Lock argues that the trial court erred by permitting Dr. Cohn to testify regarding the effects of Lock's blood alcohol content, which the court had previously ruled it would not allow. Lock also assails the trial court's decision to allow Dr. Cohn to answer a hypothetical question that was beyond the scope of the DrugScan report. Neither of Lock's arguments are availing.

Lock's first argument is based upon a mischaracterization of Dr. Cohn's testimony. We have carefully reviewed the relevant portion of the transcript and find that Dr. Cohn did not testify regarding the effects of alcohol consumption, or a 0.134% blood alcohol concentration, on Lock or any other hypothetical driver. In fact, it was because of such observations in the DrugScan report that the trial court prevented the report itself from going to the jury. Dr. Cohn's testimony was, as explained above, quite limited. He established the chain of custody of Lock's blood sample, explained DrugScan's testing procedures, and confirmed that Lock's blood alcohol content registered 0.134% and that that measurement exceeded the legal limit. Lock cannot claim that the latter remarks were prejudicial, or constituted an impermissible legal conclusion, since his own accident reconstruction expert had already offered identical testimony.

Lock's second argument concerns Dr. Cohn's response to a hypothetical question posed by the trial court regarding whether the 0.134% reading was consistent with Lock's claim that he had consumed five or six beers several hours before the accident. Dr. Cohn stated that Lock's claim was not consistent with his findings. This testimony was not, as Lock asserts, beyond the scope of the DrugScan report. It was, rather, well within the scope of Lock's own direct testimony, in which he placed at issue the timing of his alcohol consumption throughout the relevant time period. The City was certainly entitled to challenge Lock's credibility on this key issue.

In his second issue on appeal, Lock argues that the jury's award of $1,012 for pain and suffering was inadequate and that he is entitled to a new trial. We reject this argument. Whether to grant a new trial because of inadequacy of damages awarded is a matter peculiarly within the competence of the trial court, and its discretion is considerable. *Hill v. Bureau of Corrections,* 124 Pa.Cmwlth. 172, 555 A.2d 1362, 1365 (1989). Its action, therefore, will not be disturbed on appeal except where there has been a clear abuse of discretion. *Id.* So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the jury. *Id.*

Here, the jury found in Lock's favor on the initial threshold issue of whether he suffered either a permanent loss of bodily function or permanent disfigurement. In light of the conflicting expert medical testimony on the nature and extent of Lock's cervical injuries, it is reasonable to assume that the jury found no permanent loss of bodily function. The experts did agree that Lock was permanently disfigured by the scar on his right knee, which Lock exhibited to the jury and which he acknowledged does not cause him any discomfort. Given the relatively minor impact of the scar, the jury's award of $1,012 for pain and suffering bears a reasonable resemblance to the damages proved. We agree with the trial court that there is no reason on this record to disturb the jury's verdict.

For the foregoing reasons, we affirm the order of the trial court denying Lock's post-trial motions and entering judgment on the jury's verdict.

### *ORDER*

AND NOW, this 27th day of March, 2006, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter, dated April 8, 2005, is hereby AFFIRMED.