LAS VEGAS METROPOLITAN POLICE DEPARTMENT, A GOVERNMENT ENTITY; AND JARED WICKS, AN INDIVIDUAL, APPELLANTS, v. ELIZABETH YEGHIAZARIAN, AN INDIVIDUAL; ELIZABETH YEGHIAZARIAN, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF RAYMOND YEGHIAZARIAN; CHRISTINA YEGHIAZARIAN; NATALIA YEGHIAZARIAN; AND ANDREW YEGHIAZARIAN, RESPONDENTS.

No. 59382

November 7, 2013                           312 P.3d 503

*Marquis Aurbach Coffing* and *Craig R. Anderson, Micah S. Echols*, and *Chad F. Clement*, Las Vegas, for Appellants.

*Saggese & Associates, Ltd.*, and *Marc A. Saggese*, Las Vegas, for Respondents.

Before GIBBONS, DOUGLAS and SAITTA, JJ.

## OPINION

By the Court, GIBBONS, J.:

In this appeal from a judgment for the plaintiffs in a wrongful death action, we consider whether evidence of the deceased's blood alcohol content (BAC) may be admitted to show his comparative negligence. We conclude that admission of a person's BAC requires additional evidence suggesting intoxication from either a percipient witness or an expert who can testify regarding that person's commensurate level of impairment.

We also consider three other issues: (1) whether the district court abused its discretion by allowing an expert to testify based on an allegedly unreliable report, (2) whether the district court erred in reducing the jury verdict based on the deceased's comparative negligence before imposing NRS 41.035's mandatory cap on an award of damages against a public entity, and (3) whether the district court abused its discretion in awarding attorney fees that included charges for nonattorney staff. Based on our analysis of these issues, we affirm the district court's judgment; however, we

vacate in part the award of attorney fees and costs and remand this case to the district court for further analysis of the claims for attorney fees from counsel, paralegals, and office staff pursuant to the factors set forth in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969).

## FACTS AND PROCEDURAL HISTORY

Raymond Yeghiazarian was traveling westbound on Sahara Avenue and attempted a left turn at a permissive green light in order to proceed southbound on Fort Apache Road. At the same time, appellant Las Vegas Metropolitan Police Department (LVMPD) Officer Jared Wicks was driving his patrol vehicle eastbound on Sahara Avenue approaching Fort Apache Road. The speed limit on Sahara was 45 mph, but Officer Wicks was traveling between 58 mph and 74 mph. Officer Wicks did not have his police siren or lights activated. Raymond apparently did not realize how fast Officer Wicks was approaching and entered the intersection without enough time to clear it. Officer Wicks slammed on his brakes, but the two cars collided. As a result of the accident, Raymond suffered multiple internal injuries and trauma to his brain stem. After spending three weeks in a coma, Raymond died. A blood sample drawn from Raymond hours after the crash revealed that he had a BAC of .049 percent. Officer Wicks' blood was not drawn or tested for alcohol or other substances after the crash.

Raymond's wife Elizabeth, individually and as the representative of her husband's estate, as well as her son and two daughters (collectively, the Yeghiazarian family), filed a complaint against LVMPD and Officer Wicks (collectively, LVMPD) alleging negligence resulting in Raymond's death. LVMPD asserted that Raymond's injuries were caused by his own negligence, which was comparatively greater than any negligence of Officer Wicks. Before trial, LVMPD attempted to exclude testimony from the Yeghiazarian family's expert, Dr. John E. Baker, P.E., because his conclusion that Officer Wicks was traveling 74 mph was allegedly based on speculation and generalization. The district court denied the motion, stating that the discrepancies and purported weaknesses in Dr. Baker's report went to the weight of his testimony, not its admissibility. The Yeghiazarian family sought to exclude evidence of Raymond's BAC because it was unfairly prejudicial. The district court agreed, citing LVMPD's lack of other evidence suggesting intoxication, either by way of a percipient witness or expert testimony.

The subsequent jury trial lasted five days. It was undisputed that Officer Wicks was speeding without his warning lights or siren on at the time of the accident, but the expert witnesses disagreed regarding how far over the speed limit he was going. All of the ex-

perts agreed, however, that if Officer Wicks had been driving the posted speed limit, Raymond would have made it through the intersection with time to spare. The jury deliberated for three hours before returning with a $2 million verdict in favor of the Yeghiazarian family. Regarding the parties' comparative negligence, the jury found that Officer Wicks was 75-percent negligent and Raymond was 25-percent negligent. The district court applied the comparative negligence reduction before imposing the mandatory $50,000 limitation on awards for damages in tort actions against state entities under NRS 41.035.[1] Therefore, the district court issued a judgment against LVMPD for $250,000, representing $50,000 for each of the five plaintiffs. After trial, the Yeghiazarian family requested attorney fees and costs under NRS 17.115 because LVMPD had rejected their $200,000 offer of judgment four months before trial. The district court awarded the Yeghiazarian family $88,104.75 in attorney fees and $9,631.53 in costs and denied LVMPD's motions for a new trial and to alter or amend the judgment.

LVMPD now appeals, arguing that the district court (1) should not have excluded evidence of Raymond's .049 percent BAC, (2) should not have permitted Dr. Baker to testify, (3) incorrectly calculated damages, and (4) abused its discretion in awarding attorney fees. We examine each argument in turn.

### *The district court did not abuse its discretion by excluding evidence of Raymond's BAC*

LVMPD first argues that the district court abused its discretion by excluding evidence of Raymond's alcohol consumption prior to the accident. LVMPD maintains that the evidence was relevant and was not so unfairly prejudicial as to substantially outweigh its probative value. The Yeghiazarian family responds that the district court correctly excluded the BAC evidence because LVMPD lacked a percipient witness to testify regarding Raymond's level of intoxication or an expert to testify as to the possible effects of a .049 percent BAC on an individual of Raymond's age and weight. Here, we agree with the Yeghiazarian family.

We review a district court's decision to exclude evidence for an abuse of discretion. *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008). The district court's exercise of discretion will not be disturbed ''absent

---

[1]The version of NRS 41.035 in existence at the time of the accident provided for a maximum damages award of $50,000 per claimant. The current version provides for a maximum damages award of $100,000 per claimant. 2007 Nev. Stat., ch. 512, §§ 3.3, 3.5, at 3024-25.

a showing of palpable abuse." *Id.* All relevant evidence is admissible at trial unless otherwise excluded by law or the rules of evidence. NRS 48.025. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. Relevant evidence may be excluded if, among other things, its "probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1).

We recently addressed the admissibility of evidence of alcohol consumption in *FGA, Inc. v. Giglio*, 128 Nev. 271, 278 P.3d 490 (2012). In that slip-and-fall case, the district court excluded evidence that Giglio, the plaintiff, had consumed two alcoholic drinks and that a key witness had consumed four alcoholic drinks in the hour before Giglio's slip and fall. *Id.* at 276, 278 P.3d at 493. We concluded that the district court did not abuse its discretion by excluding evidence of Giglio's alcohol consumption when no "causal link [was demonstrated] between the alleged impairment and the injury" because the evidence was insufficient to show intoxication. *Id.* at 285, 278 P.3d at 499. But we concluded that the district court abused its discretion by excluding evidence that the key witness consumed alcohol because it was relevant to the reliability of his perception of the circumstances surrounding Giglio's slip and fall. *Id.*

Here, LVMPD attempted to introduce Raymond's alcohol consumption as substantive evidence, not for impeachment purposes, and therefore a causal connection between the alleged intoxication and the accident was necessary. *See id.* But LVMPD failed to present any evidence of Raymond's intoxication other than Raymond's BAC, which was under the legal limit. Admission of Raymond's BAC on its own would have required the jury to speculate as to its effects on Raymond's reaction time and judgment at the time of the accident. Thus, Raymond's BAC alone reflects the fact that he consumed alcohol but does not establish his level of intoxication or impairment at the time of the accident. His BAC is inadmissible because it is substantially more prejudicial than probative without other evidence suggesting Raymond's intoxication or an expert who can explain to a jury how his BAC, ascertained hours after the accident, would have affected him at the time of the accident. *Lock v. City of Phila.*, 895 A.2d 660, 665-66 (Pa. Commw. Ct. 2006); *see Holderer v. Aetna Cas. & Sur. Co.*, 114 Nev. 845, 852-53, 963 P.2d 459, 464 (1998) (holding that evidence of driver's ingestion of a "strong dose" of sleeping pills and antidepressants was improperly admitted because the causal connection between the medication and the accident was mere speculation).

Certainly, if Raymond was intoxicated at the time of the accident, that information would have been relevant. *See Lock*, 895 A.2d at 664-66 (affirming a district court's admission of evidence of alcohol consumption in a factually similar scenario when supported by evidence of intoxication including slurred speech, glassy eyes, alcohol odor on the breath, defendant's admission of the amount of alcohol consumed, and testimony from a forensic toxicologist on the effects of a .134 percent BAC). Since LVMPD lacked other evidence suggesting Raymond's intoxication at the time of the accident, we conclude that the district court properly excluded evidence of his BAC.

*The district court did not abuse its discretion in permitting the Yeghiazarian family's expert to testify*

LVMPD next argues that the Yeghiazarian family's expert, Dr. John Baker, should not have been permitted to testify because his expert report was based on unsound methodology. The Yeghiazarian family responds that Dr. Baker's opinions were based on a reliable methodology, not speculation. We review a district court's decision to admit expert testimony for an abuse of discretion. *In re Mosley*, 120 Nev. 908, 921, 102 P.3d 555, 564 (2004). We will only grant a new trial if LVMPD's substantial rights were affected by error. *Brown v. Capanna*, 105 Nev. 665, 672, 782 P.2d 1299, 1304 (1989); *see* NRS 47.040 ("[E]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). Here, we agree with the Yeghiazarian family.

NRS 50.275 provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by special knowledge, skill, experience, training or education may testify to matters within the scope of such knowledge." This court has distilled this statute into three main requirements for admissible expert testimony: (1) qualification, (2) assistance, and (3) limited scope. *Hallmark v. Eldridge*, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008). The assistance requirement asks whether the proposed expert's testimony is relevant and the product of reliable methodology. *Id.* at 500, 189 P.3d at 651. In determining whether the testimony is a product of reliable methodology, the district court considers whether the opinion is "(1) within a recognized field of expertise; (2) testable and has been tested; (3) published and subjected to peer review; (4) generally accepted in the scientific community . . . ; and (5) based more on particularized

facts rather than assumption, conjecture, or generalization." *Id.* at 500-01, 189 P.3d at 651-52 (footnotes omitted).

LVMPD argues that Dr. Baker's opinion was unreliable under the fifth factor because it was based on speculation and conjecture. LVMPD contends that Dr. Baker did not examine the scene of the accident or inspect the vehicles after the collision and relied exclusively on reports and photographs. LVMPD also argues that Dr. Baker should have relied on the shorter measurement of skid marks instead of the longer measurement when discrepancies existed between the reports. LVMPD contends that Dr. Baker should have compared his findings to eyewitness accounts and Officer Wicks' deposition testimony.

We conclude that the district court did not abuse its discretion in determining that Dr. Baker's testimony was the product of reliable methodology under *Hallmark*. Dr. Baker, like LVMPD's expert, was not retained until years after the accident. Dr. Baker relied on reports, diagrams, and pictures produced by LVMPD. The fact that Dr. Baker chose to use the longer measurement instead of the shorter measurement for the skid marks was an appropriate topic for cross-examination. Further, the disagreement among Dr. Baker and others regarding Officer Wicks' pre-braking speed was founded on whether the figures from the "black box" in Officer Wicks' patrol car or from the airbag accelerometer were more reliable in determining impact speed—also an appropriate topic for cross-examination. The record indicates that Dr. Baker was able to calculate to a reasonable degree of scientific certainty the vehicles' starting positions, their pre-braking and impact speeds, and the general angle at which the vehicles collided. Therefore, we cannot say the district court abused its discretion by allowing Dr. Baker to testify.

*The district court correctly calculated damages under NRS 41.035.*

After the jury's verdict, the district court applied comparative negligence to reduce the jury's $2 million verdict to $1.5 million prior to reducing the jury award to the statutory maximum of $50,000 for each of the five plaintiffs under NRS 41.035, for a total award of $250,000. LVMPD argues that this method of calculation failed to take into account the 25-percent reduction in damages for Raymond's comparative negligence. The Yeghiazarian family responds that the district court correctly reduced the $2 million verdict by 25 percent to reflect Yeghiazarian's comparative negligence before reducing the amount to the statutory maximum. As a question of law, we review issues of statutory interpretation de novo. *State, Dep't of Motor Vehicles v. Taylor-Caldwell*, 126 Nev. 132, 134, 229 P.3d 471, 472 (2010). We agree with the Yeghiazarian family.

NRS 41.141(1) provides that a plaintiff's comparative negligence does not bar recovery so long as his or her negligence was not greater than the negligence of the defendants. The jury is required to return a general verdict with the total amount of damages the plaintiff is entitled to recover without considering comparative negligence, plus a special verdict indicating the respective percentages of negligence attributable to each party. NRS 41.141(2)(b)(1), (2). The version of NRS 41.035(1) that was in effect at the time of the accident provided that awards for damages in tort actions filed against state entities "may not exceed the sum of $50,000." This "statutory cap on the damages the state must pay for its tortious conduct furthers a legitimate interest in protecting the state treasury." *Arnesano v. State ex rel. Dep't of Transp.*, 113 Nev. 815, 819, 942 P.2d 139, 142 (1997), *abrogated in part on other grounds by Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720 (2007). We have previously defined "damages" under NRS 41.035(1) as:

> "A pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another. A sum of money awarded to a person injured by the tort of another. Restatement, Second, Torts, § 12A. Money compensation sought or awarded as a remedy for a breach of contract or for tortious acts."

*Arnesano*, 113 Nev. at 821, 942 P.2d at 143 (quoting *Black's Law Dictionary* 389 (6th ed. 1990)). An "award" is "[a] final judgment or decision, esp. one by an arbitrator or by a jury assessing damages." *Black's Law Dictionary* 157 (9th ed. 2009).

The jury's award in this case encompassed the amount of the general verdict minus the percentage of comparative negligence that the jury noted on its special verdict form—in this case the $2 million general verdict less Raymond's 25-percent fault rendered a final jury award of $1.5 million. Under NRS 41.035(1), the jury's award could not exceed $50,000 per plaintiff, so the district court correctly interpreted the statute to reduce the award after adjusting for Raymond's comparative negligence. *See State v. Eaton*, 101 Nev. 705, 709-11, 710 P.2d 1370, 1373-74 (1985) (holding that the district court properly subtracted the amount the plaintiff received for releasing other co-defendants before reducing the jury verdict to the statutory maximum), *overruled on other grounds by*

*State ex rel. Dep't of Transp. v. Hill,* 114 Nev. 810, 818, 963 P.2d 480, 485 (1998). Therefore, we conclude that the district court properly applied comparative negligence and NRS 41.035(1).

*The district court did not abuse its discretion in awarding attorney fees*

The district court awarded attorney fees and costs to the Yeghiazarian family because LVMPD rejected the Yeghiazarian family's $200,000 offer of judgment and the Yeghiazarian family obtained a judgment of $250,000 against LVMPD. NRS 17.115(4)(d)(3) provides that if a party who rejects an offer of judgment fails to obtain a more favorable judgment, the district court may order that party to pay the "reasonable attorney's fees" that the other party incurs from the date of service of the offer to the date of entry of the judgment. *See also* NRCP 68(f)(2) (stating that "[i]f the offeree rejects an offer [of judgment] and fails to obtain a more favorable judgment, . . . the offeree shall pay the offeror's post-offer costs . . . and reasonable attorney's fees").

LVMPD argues that $34,034.75 of the $88,104.75 attorney fees award was for the work of "office staff," and that the Yeghiazarian family should therefore only be able to recover $54,070, the amount charged by attorneys Marc Sagesse and his associate Robert Flummerfelt. LVMPD urges us to adopt the dissenting opinion in *Missouri v. Jenkins,* 491 U.S. 274, 295-98 (1989) (Rehnquist, C.J., dissenting), which opined that nonattorney staff charges are not part of a "reasonable attorney's fee." The Yeghiazarian family argues that nonattorney staff costs are recoverable because they are part of a reasonable attorney fee and promote cost-effective litigation. We agree with the Yeghiazarian family. We review an award of attorney fees and costs for an abuse of discretion. *Ozawa v. Vision Airlines,* 125 Nev. 556, 562, 216 P.3d 788, 792 (2009).

We decline LVMPD's invitation to adopt the dissenting opinion in *Jenkins.* Rather, we agree with the majority opinion in that case, which stated that

> [A] "reasonable attorney's fee" cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney. Thus, the fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client . . . . We thus take as our starting point the self-evident

proposition that the "reasonable attorney's fee" provided for by statute should compensate the work of paralegals, as well as that of attorneys.

*Jenkins*, 491 U.S. at 285. Further, the use of paralegals and other nonattorney staff reduces litigation costs, so long as they are billed at a lower rate. *Id.* at 288. The Ninth Circuit and other jurisdictions have also adopted this position. *See Richlin Sec'y Serv. Co. v. Chertoff*, 553 U.S. 571, 580-83 (2007) (reaffirming *Jenkins*); *Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) ("[F]ees for work performed by nonattorneys such as paralegals may be billed separately, at market rates, if this is the prevailing practice in a given community." (internal quotations omitted)); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) ("Paralegals' time is includable in an award of attorney's fees."); *Todd Shipyards Corp. v. Dir., Office of Workers' Comp. Programs*, 545 F.2d 1176, 1182 (9th Cir. 1976) ("Paralegals can do some of the work that the attorney would have to do anyway and can do it at substantially less cost per hour."); *Guinn v. Dotson*, 28 Cal. Rptr. 2d 409, 413 (Ct. App. 1994) (reasonable attorney fees include necessary support services for attorneys). As NRS 17.115(4)(d)(3) and NRCP 68(f)(2) both refer to "reasonable attorney's fees," we conclude that this phrase includes charges for persons such as paralegals and law clerks. Therefore, we conclude that the district court did not abuse its discretion by including charges for these services in its calculation of attorney fees.

But while the district court analyzed whether the hourly rate charged by Mr. Saggese was reasonable, it failed to evaluate whether Mr. Flummerfelt's, the paralegals', or the office staff's hourly rates were reasonable under the circumstances. We therefore vacate the attorney fees award and remand this case to the district court for further analysis of the claims for attorney fees from Mr. Flummerfelt, the paralegals, and the office staff pursuant to the factors set forth in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969).

We have considered the parties' remaining arguments and conclude that they are without merit. Accordingly, we affirm the district court's judgment, affirm in part and vacate in part the district court's post-judgment order, and remand this matter to the district court for further proceedings consistent with this opinion.

DOUGLAS and SAITTA, JJ., concur.