139 Nev., Advance Opinion 56

FILED

MAR 07 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

# IN THE SUPREME COURT OF THE STATE OF NEVADA

KIMBERLY D. TAYLOR, an Individual, Appellant, v.
KEITH BRILL, M.D., FACOG, FACS, an Individual; and
WOMEN'S HEALTH ASSOCIATES OF SOUTHERN
NEVADA-MARTIN PLLC, a Nevada Professional Limited
Liability Company, Respondents.

### No. 83847

KEITH BRILL, M.D., FACOG, FACS, an Individual; and
WOMEN'S HEALTH ASSOCIATES OF SOUTHERN
NEVADA-MARTIN PLLC, a Nevada Professional Limited
Liability Company, Appellants, v. KIMBERLY D. TAY-
LOR, an Individual, Respondent.

### No. 84492 ✓

KEITH BRILL, M.D., FACOG, FACS, an Individual; and
WOMEN'S HEALTH ASSOCIATES OF SOUTHERN
NEVADA-MARTIN PLLC, a Nevada Professional Limited
Liability Company, Appellants, v. KIMBERLY D. TAY-
LOR, an Individual, Respondent.

### No. 84881

December 21, 2023

Appeals from a judgment following a jury verdict in a medical malpractice action, a post-judgment order granting in part and denying in part a motion to retax and settle costs, and a post-judgment order denying attorney fees. Eighth Judicial District Court, Clark County; Monica Trujillo, Judge,[1] and Joseph T. Bonaventure, Sr. Judge.

**Reversed and remanded.**

*Breeden & Associates, PLLC*, and *Adam J. Breeden*, Las Vegas, for Kimberly D. Taylor.

*McBride Hall* and *Heather S. Hall* and *Robert C. McBride*, Las Vegas, for Keith Brill, M.D., FACOG, FACS, and Women's Health Associates of Southern Nevada-Martin PLLC.

Before the Supreme Court, STIGLICH, C.J., and HERNDON and PARRAGUIRRE, JJ.

---

[1]While Judge Carli Lynn Kierny signed the final judgment, the district court case was assigned to, and the trial was presided over by, Judge Monica Trujillo.

24-08294

## OPINION

By the Court, HERNDON, J.:

In these appeals, we consider whether defendants to a medical malpractice action may defend by arguing, or otherwise present evidence concerning, the plaintiff's informed consent or assumption of the risk when the plaintiff does not raise a claim based on lack of informed consent. We conclude that assumption-of-the-risk evidence may be relevant in certain instances where a plaintiff's consent to the procedure is challenged. But neither the defense itself nor evidence of informed consent is proper in a medical malpractice action, like this one, where the plaintiff's consent is uncontested. Thus, the district court erred in allowing such arguments and evidence at trial here.

We also consider whether a plaintiff must use expert testimony to show that the billing amounts of the medical damages they seek are reasonable and customary. While an appropriate expert can testify as to the reasonableness of the amount of damages, we hold that expert testimony is not required when other evidence demonstrates reasonableness. The district court abused its discretion by prohibiting such evidence. Based on these errors, and others discussed herein, we reverse the district court's judgment and remand this matter for further proceedings.

### FACTS AND PROCEDURAL HISTORY

Kimberly Taylor, the plaintiff in the lawsuit below, had a hysteroscopy performed by the defendant, Dr. Keith Brill. Dr. Brill perforated Taylor's uterus and bowel during the procedure. Taylor reported escalating pain after the surgery and was twice transported to an emergency room via ambulance. On the second trip, the attending doctor concluded her symptoms were consistent with an uncontrolled bowel perforation and performed an emergency surgery to remove any contamination and to correct what turned out to be a three-centimeter perforation.

Taylor then filed a medical malpractice action against Dr. Brill and the Women's Health Associates of Southern Nevada-Martin PLLC, amongst others. Taylor alleged that Dr. Brill had breached the standard of care by piercing her uterine wall and small intestine during surgery. Taylor also alleged Dr. Brill continued surgery after observing her uterine perforation, failed to evaluate and diagnose her intestine perforation, failed to inform the post-anesthesia care unit of the uterine perforation and instruct the post-anesthesia team to observe her for specific concerns requiring further examination, and failed to apprise her of these complications. The matter

proceeded to a jury trial. Before trial, Taylor sought to exclude any references to known risks or complications, as well as hospital documents regarding her informed consent and educating her on the risks of the procedure to be performed. The district court ultimately ruled that Dr. Brill could introduce evidence of Taylor's knowledge of the risks and complications associated with the procedure but not her informed consent form. At the conclusion of trial, the jury unanimously found in favor of Dr. Brill and denied all of Taylor's claims. Taylor appeals from the final judgment in Docket No. 83847. Dr. Brill and Women's Heath Associates appeal from certain post-judgment orders in consolidated Docket Nos. 84492 and 84881.

## DISCUSSION

We first address Taylor's challenge to the district court's admission of evidence regarding her knowledge of the risks associated with the procedure Dr. Brill performed. We then address Taylor's other evidentiary challenges, including to the district court's decisions to prohibit her from presenting nonexpert evidence in support of her damages claim and to allow evidence of insurance write-downs. Finally, we address Taylor's remaining challenge concerning the rejection of a portion of Taylor's proposed closing argument.

### Evidentiary decisions

We review a district court's decision to admit or exclude evidence for an abuse of discretion and will not disturb such a decision "absent a showing of palpable abuse." *Las Vegas Metro. Police Dep't v. Yeghiazarian*, 129 Nev. 760, 764-65, 312 P.3d 503, 507 (2013). But when an evidentiary ruling rests on a question of law, we review it de novo. *Davis v. Beling*, 128 Nev. 301, 311, 278 P.3d 501, 508 (2012).

### Informed consent and assumption of the risk

Taylor first challenges the district court's decision to admit evidence of her knowledge of the risks and potential complications of her surgery through witness testimony, Taylor's hospital discharge instructions, and associated paperwork. Taylor asserts that such evidence is irrelevant in this case because she did not allege that she was not informed of the risks associated with her procedure or that Dr. Brill failed to obtain her consent. Dr. Brill contends that the evidence is relevant because the complication she experienced was a known risk of the procedure and the evidence demonstrated that such a complication could occur in the absence of negligence.

Only relevant evidence is admissible. NRS 48.025; *see also Desert Cab Inc. v. Marino*, 108 Nev. 32, 35, 823 P.2d 898, 899 (1992). Relevant evidence is "evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. But relevant evidence is "not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1).

To succeed in a professional negligence action, a plaintiff must prove that, in rendering services, a health care provider failed "to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." NRS 41A.015. The plaintiff must establish three things: "(1) that the doctor's conduct departed from the accepted standard of medical care or practice; (2) that the doctor's conduct was both the actual and proximate cause of the plaintiff's injury; and (3) that the plaintiff suffered damages." *Prabhu v. Levine*, 112 Nev. 1538, 1543, 930 P.2d 103, 107 (1996).

We have not previously considered whether evidence of informed consent is relevant, or if an assumption-of-the-risk defense is proper, in a professional negligence action. Generally, the first two elements of such an action—deviation from the standard of care and medical causation—are shown by evidence consisting of "expert medical testimony, material from recognized medical texts or treatises or the regulations of the licensed medical facility wherein the alleged negligence occurred." NRS 41A.100(1). An assumption-of-the-risk defense, on the other hand, requires proof of "(1) voluntary exposure to danger, and (2) actual knowledge of the risk assumed." *Sierra Pac. Power Co. v. Anderson*, 77 Nev. 68, 71, 358 P.2d 892, 894 (1961) (quoting *Papagni v. Purdue*, 74 Nev. 32, 35, 321 P.2d 252, 253 (1958)). As the defense "is founded on the theory of consent," a party may seek to present evidence of a plaintiff's informed consent to support it.[2] *Id.* We conclude that such evidence and argument is irrelevant to demonstrating that a medical provider conformed to the accepted standard of care or to refute medical causation when defending against a medical malpractice claim. *See* NRS 41A.100(1). Indeed, informed consent evidence "does not make it more or less probable that the physician was negligent in . . . performing [the surgery] in the post-consent timeframe" and is therefore inadmissible to determine whether a medical professional breached the standard of care. *Brady v. Urbas*, 111 A.3d 1155, 1162 (Pa. 2015); *see also* NRS 48.025(2) (deeming irrelevant evidence inadmissible).

---

[2]Dr. Brill argues he did not present such a defense, but his answer to the complaint includes the affirmative defense that Taylor "assumed the risks of the procedures, if any, performed."

Even if a plaintiff gave informed consent, that would not "vitiate [a medical provider's] duty to provide treatment according to the ordinary standard of care" because "assent to treatment does not amount to consent to negligence, regardless of the enumerated risks and complications of which the patient was made aware." *Brady*, 111 A.3d at 1162. Other jurisdictions are in accord. *See, e.g.*, *Hayes v. Camel*, 927 A.2d 880, 889-90 (Conn. 2007) ("[E]vidence of informed consent, such as consent forms, is both irrelevant and unduly prejudicial in medical malpractice cases without claims of lack of informed consent."); *Baird v. Owczarek*, 93 A.3d 1222, 1233 (Del. 2014) (concluding that once the plaintiff dismissed their informed consent claim, any signed consent forms "became irrelevant, because assumption of the risk is not a valid defense to a claim of medical negligence, and because [such evidence] is neither material [n]or probative of whether [the doctor] met the standard [of] care" (citation omitted)); *Wilson v. P.B. Patel, M.D., P.C.*, 517 S.W.3d 520, 525 (Mo. 2017) (concluding that such evidence would mislead the jury that the plaintiff consented to injury); *Waller v. Aggarwal*, 688 N.E.2d 274, 275-76 (Ohio App. Ct. 1996) (recognizing that informed consent evidence is generally irrelevant because it does "not grant consent for the procedure to be performed negligently [or] waive appellant's right to recourse in the event the procedure was performed negligently" and that it has the potential to confuse the jury); *Wright v. Kaye*, 593 S.E.2d 307, 317 (Va. 2004) (holding that when a plaintiff does not place consent in issue, "evidence of information conveyed to [the plaintiff] concerning the risks of surgery in obtaining her consent is neither relevant nor material to the issue of the standard of care . . . [or] upon the issue of causation").

Despite the foregoing, certain evidence that may support an assumption-of-the-risk defense, such as evidence of the known risks and complications of a particular procedure, may help inform a jury as it evaluates whether there has been a breach of the accepted standard of care. *See Mitchell v. Shikora*, 209 A.3d 307, 318 (Pa. 2019) ("[R]isks and complications evidence may assist the jury in determining whether the harm suffered was more or less likely to be the result of negligence."). Other courts have distinguished between inadmissible informed consent evidence—such as consent forms or communications between a physician and patient regarding the purpose, nature, and risks of procedures—and admissible evidence of the risks and complications of surgery. *See id.* at 316-18. However, evidence of a procedure's risks must still fall within the ambit of NRS 41A.100(1). And courts must analyze on a case-by-case basis whether the evidence should still be excluded because its potential

to confuse the jury substantially outweighs its probative value. *See* NRS 48.035(1).

Since expert witness testimony may establish the standard of care and breach, the testimony regarding risks and complications of the procedure by Taylor's and Dr. Brill's retained experts was admissible. *See* NRS 41A.100(1). However, lay witness testimony and hospital literature are generally not suitable for this purpose, making the testimony by Taylor and Dr. Brill, as well as portions of Taylor's discharge instructions and associated paperwork about this same subject, inadmissible. *Id.* Accordingly, the district court abused its discretion by allowing evidence of Taylor's knowledge of the procedure's risks and consequences and evidence probative of Taylor's informed consent. And we are not convinced that the limiting instruction given to the jury cured the prejudice resulting from this error.

### Special damages

Taylor sought special damages as remuneration for the medical services she underwent following her injury from the surgery performed by Dr. Brill. To be entitled to special damages, Taylor had to demonstrate that the amounts she was billed were reasonable and necessary. *See Pizzaro-Ortega v. Cervantes-Lopez*, 133 Nev. 261, 266, 396 P.3d 783, 788 (2017). The necessity of the medical services Taylor received after Dr. Brill's allegedly negligent surgery was not contested in the trial court. Taylor's retained expert, Dr. Berke, clearly testified that the medical services Taylor received were reasonable and necessary and were caused by the perforations that arose from Dr. Brill's surgical procedure. The district court excluded the bulk of the evidence Taylor sought to admit in support of her special damages claim—including medical bills, testimony from health care industry witnesses about those bills, and testimony from Taylor herself, who had worked in the medical billing industry with both physicians and hospitals for over two decades. The district court relied, in large part, on its finding that testimony about the reasonable and customary nature of medical charges was beyond the knowledge of a layperson and required an expert. Since Taylor proffered no expert to testify that the charges for the medical services she received were usual, customary, or reasonable, the district court excluded them. In doing so, the district court relied on *Curti v. Franceschi*, which held that an award for medical services was supported by substantial evidence where the attending doctor testified as to the amount that the patient was charged, that he believed such charges were reasonable, and that he had no usual and customary fee. 60 Nev. 422, 428, 111 P.2d 53, 56 (1941). But that case does not stand for the proposition that evidence of the reasonableness

of the damages sought can *only* be proven by an expert witness or physician. Here, Taylor presented three witnesses—the CFO of the charging hospital, a health care billing representative, and a health care customer service billing manager—all of whom would have testified regarding the charges for the medical treatment provided to Taylor. Taylor also sought to testify herself on the issue based in part on her experience working in the medical billing industry for over two decades. This information was relevant and therefore admissible. NRS 48.015; NRS 48.025. The district court thus abused its discretion in excluding this evidence, *see Yeghiazarian*, 129 Nev. at 764-65, 312 P.3d at 507, which affected Taylor's substantial rights, as it prevented her from proving a prima facia case for damages, *see Brown v. Capanna*, 105 Nev. 665, 672, 782 P.2d 1299, 1304 (1989) (holding that an appellant's substantial rights were affected by the exclusion of testimony that would have helped prove their prima facie case).

### Insurance write-downs

Although the district court excluded the vast majority of medical billing evidence related to Taylor's proposed special damages, it did admit evidence related to two lower-cost items of medical billing. Taylor challenges the district court's decision to permit Dr. Brill to present evidence of insurance write-downs in defending against this aspect of her damages claim. The district court based its decision on its interpretation of NRS 42.021(1); therefore, the issue presented is one of law that we review de novo. *See Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014) (recognizing that statutory interpretation questions are issues of law); *Davis*, 128 Nev. at 311, 278 P.3d at 508.

NRS 42.021(1) abrogated the common law collateral source doctrine by creating an exception for evidence of collateral source payments in medical malpractice actions:

> In an action for injury or death against a provider of health care based upon professional negligence, if the defendant so elects, the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the injury or death pursuant to . . . any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services.

NRS 42.021(1); *see also McCrosky v. Carson Tahoe Reg'l Med. Ctr.*, 133 Nev. 930, 936, 408 P.3d 149, 154-55 (2017) (discussing the change from common law). However, if evidence is introduced pursuant to subsection (1), the source of the collateral benefits

cannot "[r]ecover any amount against the plaintiff . . . or . . . [b]e subrogated to the rights of the plaintiff against a defendant." NRS 42.021(2). This statute was thus intended to prevent a situation where a jury would reduce a plaintiff's award based on collateral source evidence, but the collateral source would still seek reimbursement from the award. *Harper v. Copperpoint Mut. Ins. Holding Co.*, 138 Nev., Adv. Op. 33, 509 P.3d 55, 60 (2022) (citing *McCrosky*, 133 Nev. at 936, 408 P.3d at 155).

Construing this statute narrowly, we conclude that the district court erred in finding that the statute permitted the admission of insurance write-downs. *See Branch Banking & Tr. Co. v. Windhaven & Tollway, LLC*, 131 Nev. 155, 158-59, 347 P.3d 1038, 1040 (2015) ("Statutes that operate in derogation of the common law should be strictly construed . . . ."). NRS 42.021(1) contemplates evidence only of actual benefits paid to the plaintiff by collateral sources, and insurance write-downs do not create any payable benefit to the plaintiff. Insurance write-downs are therefore inadmissible under NRS 42.021(1).

*Closing arguments*

Lastly, Taylor asserts that the district court improperly limited her closing arguments. We review de novo whether an attorney's comments would constitute misconduct. *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 364, 212 P.3d 1068, 1078 (2009); *see also Lioce v. Cohen*, 124 Nev. 1, 20, 174 P.3d 970, 982 (2008).

Taylor sought to make a closing argument "that the jury with its verdict should 'send a message' to Defendants that safety is important, that [Dr. Brill] must answer for the injury he caused to his patient, and that he cannot be careless toward his patient, etc." In denying this request, the district court stated that Taylor "shall not be permitted to use the phrase 'send a message[ ]' . . . in closing argument." But Taylor's argument was not inappropriate because it was based on the evidence in the case, rather than "implor[ing] the jury to disregard the evidence." *Capanna*, 134 Nev. at 890-91, 432 P.3d at 731. Asking the jury to send a message is not prohibited "so long as the attorney is not asking the jury to ignore the evidence." *Id.* (quoting *Pizarro-Ortega*, 133 Nev. at 269, 396 P.3d at 790). The district court therefore erred in limiting Taylor's closing argument in this manner.

## CONCLUSION

Informed consent evidence is inadmissible, and an assumption-of-the-risk defense is improper, in professional negligence suits when the plaintiff does not challenge consent, as it serves only to confuse and mislead the jury. Additionally, expert or physician

testimony is not required to demonstrate the reasonableness of the billing amount of special damages. And evidence of insurance write-downs does not fall within the type of evidence NRS 42.021(1) makes admissible. The errors made below regarding these issues, along with the improper limiting of Taylor's closing argument, warrant reversing the judgment in Docket No. 83847 and remanding for further proceedings in line with this opinion, including a new trial.[3]

Because we reverse the underlying judgment, we necessarily reverse the order granting in part and denying in part Taylor's motion to retax and settle costs in Docket No. 84492 and the order denying Dr. Brill's request for attorney fees in Docket No. 84881. *See Frederic & Barbara Rosenberg Living Tr. v. MacDonald Highlands Realty, LLC*, 134 Nev. 570, 579-80, 427 P.3d 104, 112 (2018) (recognizing the necessity of reversing a fees and costs order when the substantive judgment was being reversed).

STIGLICH, C.J., and PARRAGUIRRE, J., concur.

———

NOTE—As a service to members of the bench and bar, these printed advance opinions are mailed out as soon as possible after opinions are filed. The court's opinions are subject to modification or withdrawal, including as a result of action taken on petitions for rehearing. Any such action taken by the court will be noted on subsequent advance sheets.

This opinion is subject to format revision before publication in the *Nevada Reports* or in the *Pacific Reporter*. Readers are requested to notify the Supreme Court Clerk of any typographical or other formal errors so that corrections may be made before they go to press. The Clerk may be contacted by mail at 201 South Carson Street, Carson City, Nevada 89701-4702, by telephone at (775) 684-1600, or by email at nvscclerk@nvcourts.nv.gov.

ELIZABETH A. BROWN, *Clerk*

———

[3]We have considered Taylor's remaining arguments, including her assertions that the district court erred in limiting her voir dire, in not admitting into evidence a demonstrative medical device, in not allowing proposed impeachment of a defense expert, in the settling of jury instructions, and in allowing misconduct by defense counsel in closing argument, and we find no errors.