129 Nev., Advance Opinion 94

IN THE SUPREME COURT OF THE STATE OF NEVADA

FRANKIE ALAN WATTERS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 59703

**FILED**

NOV 2 7 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of possession of a stolen vehicle, grand larceny of a vehicle, and failure to stop on the signal of a police officer. Eighth Judicial District Court, Clark County; David B. Barker, Judge.

*Reversed and remanded.*

Philip J. Kohn, Public Defender, and Audrey M. Conway, Deputy Public Defender, Clark County,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Nancy A. Becker, Deputy District Attorney, Clark County,
for Respondent.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, C.J.:

We consider whether the State's use of a PowerPoint during opening statement that includes a slide of the defendant's booking photo with the word "GUILTY" superimposed across it constitutes improper

13-35858

advocacy and undermines the presumption of innocence essential to a fair trial.[1]

## I.

Frankie Alan Watters was charged with and convicted of possession of a stolen vehicle, grand larceny of a vehicle, and failure to stop on the signal of a police officer. The charges grew out of a crime spree in which Watters allegedly stole a car, got in a wreck, fled, stole another car, became involved in a high-speed chase, ditched the second car, ran into a store, and was finally arrested after being knocked to the ground and bitten several times in the leg by a police dog.

At trial, the State used a PowerPoint to support its opening statement to the jury. The presentation included a slide showing Watters's booking photo with the word "GUILTY" written across his battered face.

---

[1]Watters also argues that the State presented insufficient evidence to support the jury's verdict. We conclude that the evidence when viewed in the light most favorable to the State is sufficient to establish his guilt beyond a reasonable doubt as determined by a rational trier of fact. *See* NRS 205.228(1); NRS 205.273(1)(b); NRS 484B.550(1); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We decline to consider the other issues raised on appeal.



Figure 1. Prosecutor's opening statement PowerPoint slide.

The prosecutor used the PowerPoint first to display the booking photo, then to add the word "GUILTY," while she wrapped up: "So after hearing the evidence in the case, we're going to ask you to find the Defendant *guilty* on possession of stolen vehicle, *guilty* on grand larceny auto, and *guilty* on failure to stop on a police officer's signal."

The defense reviewed and objected to the booking-photo slide sequence before opening statements began. The district court overruled the objection. It observed that such slides are used "all the time. . . .

They're asking based upon the evidence to find Defendant guilty and [then] they have [guilty] pop up."[2]

Watters had not been in court when the objection was made. After opening statements, defense counsel made a record that Watters was "very upset" when the prosecution "showed the picture and wrote the word[ ] guilty." The court assured Watters that his "lawyer did object strongly to that [but] PowerPoints under the case[s are] allowed—both sides are allowed to express where they believe the evidence will take them and the ultimate conclusion that the jury should reach, and that's all that photograph does."

## II.

"A criminal defendant has a fundamental right to a fair trial secured by the United States and Nevada Constitutions." *Hightower v. State*, 123 Nev. 55, 57, 154 P.3d 639, 640 (2007) (citing U.S. Const. amend. XIV; Nev. Const. art. 1, § 8). "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). "Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as

---

[2]The prosecution did not refer to the picture as a booking photo. *Cf. United States v. Simmons*, 581 F.3d 582, 589 (7th Cir. 2009) ("the use of mug shots is disfavored and usually impermissible" unless specific need is shown).

proof at trial.'" *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)).

The booking-photo slide sequence declared Watters guilty before the first witness was called and should not have been allowed. An opening statement outlines "what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument." *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring); *see Garner v. State*, 78 Nev. 366, 371, 374 P.2d 525, 528 (1962) ("The purpose of the opening statement is to acquaint the jury and the court with the nature of the case."). In a criminal case, "[t]he prosecutor's opening statement should be confined to a statement of the issues in the case and the evidence the prosecutor intends to offer which the prosecutor believes in good faith will be available and admissible." ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standard 3-5.5 (3d ed. 1993). It is not "an opportunity to poison the jury's mind against the defendant or to recite items of highly questionable evidence." *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988) (internal quotation marks omitted), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137, 150 (1995), *as stated in United States v. Chen*, 131 F.3d 375, 381 (4th Cir. 1997).

The State contends that *State v. Sucharew*, 66 P.3d 59, 63-64 (Ariz. Ct. App. 2003), and *Dolphy v. State*, 707 S.E.2d 56, 58 (Ga. 2011), support its PowerPoint-supported opening statement to the jury. But in *Sucharew*, the prosecution's PowerPoint "was essentially a slide show of photographic exhibits" and "was not prejudicial or inflammatory." 66 P.3d at 63-64. And in *Dolphy*, the trial court *sustained* the defendant's

objection to the prosecution's use in opening statement of PowerPoint slides that read "Defendant's Story Is a Lie" and "People Lie When They Are Guilty." 707 S.E.2d at 57. The question in *Dolphy* was whether the trial court's "immediate corrective action, ordering that the slides be taken down" and curative instructions defeated Dolphy's argument that "the trial court . . . deprive[d him] of a fair trial by failing to declare a mistrial sua sponte." *Id.*

As these cases suggest, PowerPoint, as an advocate's tool, is not inherently good or bad. Its propriety depends on content and application. A prosecutor may use PowerPoint slides to support his or her opening statement so long as the slides' content is consistent with the scope and purpose of opening statements and does not put inadmissible evidence or improper argument before the jury. *See Sucharew*, 66 P.3d at 63-64. But a PowerPoint may not be used to make an argument visually that would be improper if made orally. *See Dolphy*, 707 S.E.2d at 58. *Compare Allred v. State*, 120 Nev. 410, 419, 92 P.3d 1246, 1252-53 (2004) (upholding State's use of annotated photographs as demonstrative exhibits in closing argument where the photographs were in evidence and the district court ordered the argumentative annotations removed), *with In re Glasmann*, 286 P.3d 673, 676, 678-79 (Wash. 2012) (reversing convictions where the State used a PowerPoint presentation in closing argument that included slides featuring the defendant's "unkempt and bloody" booking photo with the word "GUILTY" being superimposed in different directions to declare him "GUILTY, GUILTY, GUILTY" of the multiple crimes with which he was charged; "the prosecutor's modification of photographs by adding captions was the equivalent of unadmitted evidence" that

Supreme Court
OF
Nevada

(O) 1947A

improperly expressed the prosecutor's "personal opinion of guilt" and deprived Glasmann of a fair trial).

Here, the prosecutor orally declared that she would be asking the jurors to find Watters guilty. But the PowerPoint that accompanied her declaration displayed Watters's booking photograph with a pop-up that directly labeled him "GUILTY." These are not just two different ways of saying the same thing, as the State suggests. While the oral statement told the jurors that they could expect the prosecutor to ask for a guilty verdict at the end of the trial, the PowerPoint slide directly declared Watters guilty.

The prosecution could not *orally* declare the defendant guilty in opening statement. Doing so would amount to improper argument and the expression of personal opinion on the defendant's guilt, which is forbidden. *See Collier v. State*, 101 Nev. 473, 480, 705 P.2d 1126, 1130 (1985) (a prosecutor should not express her personal opinion on the defendant's guilt; "[b]y stepping out of the prosecutor's role, which is to seek justice, and by invoking the authority of . . . her own supposedly greater experience and knowledge, a prosecutor invites undue jury reliance on the conclusions personally endorsed by the prosecuting attorney" (citation omitted)). Making this improper argument "*visually* through use of slides showing [Watters's] battered face and superimposing . . . capital letters" spelling out GUILTY "is even more prejudicial" than doing so orally. *Glasmann*, 286 P.3d at 680 (emphasis added). "'[W]ith visual information, people believe what they see and will not step back and critically examine the conclusions they reach, unless they are explicitly motivated to do so. Thus, the alacrity by which we process and make decisions based on visual information conflicts with a

bedrock principle of our legal system—that reasoned deliberation is necessary for a fair justice system.'" *Id.* (quoting Lucille A. Jewell, *Through a Glass Darkly: Using Brain Science and Visual Rhetoric to Gain a Professional Perspective on Visual Advocacy*, 19 S. Cal. Interdisc. L.J. 237, 293 (2010)); *see* Mary Susan Weldon & Henry L. Roediger, III, *Altering Retrieval Demands Reverses the Picture Superiority Effect*, 15 Memory & Cognition 269, 269 (1987) (research shows that pictures are typically remembered better than words). We therefore conclude that it was error, and an abuse of discretion, for the district court to allow the prosecutor's booking-photo slide sequence in opening statement.

The error undermined the presumption of innocence, *see* NRS 175.191; *State v. Teeter*, 65 Nev. 584, 642, 200 P.2d 657, 685 (1948), *overruled on other grounds by In re Wheeler*, 81 Nev. 495, 499, 406 P.2d 713, 716 (1965), which is a basic component of "[the] fair trial" guaranteed by the Fourteenth Amendment "under our system of criminal justice." *Williams*, 425 U.S. at 503. Courtroom practices that undermine the presumption of innocence are unconstitutional unless they serve an essential state interest. *Flynn*, 475 U.S. at 568. A courtroom practice undermines the presumption of innocence when "an unacceptable risk is presented of impermissible factors coming into play" in the jury's evaluation of the evidence. *Williams*, 425 U.S. at 505. Routinely allowing prosecutors to use booking photos with "guilty" written across them during opening statement does not serve an essential state interest and poses an unacceptable risk that the jury's mindset will be tainted and the fairness of its fact-finding function impaired. *See Arizona v. Washington*, 434 U.S. 497, 512 (1978) ("An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an

impartial tribunal. Indeed, such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted." (footnote omitted)).

A presumption-of-innocence error is of constitutional dimension, so we review for harmless error under the *Chapman v. California* standard and will reverse if the State fails to prove, beyond a reasonable doubt, that the error did not contribute to the verdict obtained. 386 U.S. 18, 24 (1967); *see also Valdez v. State*, 124 Nev. 1172, 1188-89, 196 P.3d 465, 476 (2008).

Here, the State argues that the error was harmless because the PowerPoint was not admitted into evidence; the jury was instructed on the presumption of innocence at the beginning and end of trial; the slides were displayed only briefly; and the evidence of Watters's guilt was overwhelming. All this may be true. But in the presumption-of-innocence context, "[t]he actual impact of a particular practice on the judgment of jurors cannot always be fully determined," and the Supreme Court "has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny." *Williams*, 425 U.S. at 504.

Routinely allowing prosecutors to use PowerPoint slides during opening that label the defendant guilty carries a genuine risk of unfair bias, *cf. Washington*, 434 U.S. at 512, in part because "[h]ighly prejudicial images may sway a jury in ways that words cannot." *Glasmann*, 286 P.3d at 679. If the district court had promptly ordered the prosecution to remove the booking-photo slide sequence and given the jury an immediate curative instruction, as in *Dolphy*, 707 S.E.2d at 57, this would be a much different case. *Cf. United States v. Dougherty*, 810

F.2d 763, 768 (8th Cir. 1987) (a curative instruction that adequately identified the prosecutor's improper comment during opening statement and instructed the jury to disregard it was sufficient to mitigate prejudice); *but see Washington,* 434 U.S. at 513 (instructing the jury to disregard an improper opening statement "will not necessarily remove the risk of bias that may be created by improper argument"). But here, the court had already deemed the slide sequence permissible. Hence, the slides remained up and no instruction to disregard them was given. And the presumption-of-innocence instructions the jury received had no connection to the booking-photo slide sequence. Watters's principal defense was that he was not the man who stole the cars, just someone the police happened to find who matched the suspect's description whose face had been bloodied, not by an airbag deploying, but by a police dog. Whether a reasonable jury would have found in Watters's favor based on this defense is not for this court to say. But the State has not shown beyond a reasonable doubt that the booking-photo slide sequence did not affect the jury's determination of Watters's guilt. This requires that we reverse and remand this case for a new trial.

_____, C.J.
Pickering

We concur:

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

PARRAGUIRRE, J., concurring:

I concur in the result only.

_____, J.
Parraguirre