# IN THE SUPREME COURT OF THE STATE OF NEVADA

EMONE JAMES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 70486

FILED

JUN 08 2018



ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is a direct appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit robbery, robbery with use of a deadly weapon, and murder with use of a deadly weapon. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

### *FACTS AND PROCEDURAL HISTORY*

Emone James was convicted of the shooting murder and armed robbery of Sterling "Shawn" Niitsuma after an eight-day jury trial. The court sentenced James to life with parole eligibility after 20 years and an additional 96- to 240-month consecutive deadly weapon enhancement, plus a consecutive sentence of 72 to 180 months and a 72- to 180-month weapons enhancement, and a concurrent sentence of 24 to 60 months.

Testimony at James' trial revealed that at least three men orchestrated the robbery and murder of Niitsuma, one of whom was overwhelmingly identified as Zai "Z" Burton. However, the identifications of James as a participant of the robbery and murder were unreliable, thus, any evidence connecting James to co-conspirator Burton during the time of the murder was central to the State's theory of prosecution. The State prosecuted James under two theories: that James was guilty as Niitsuma's shooter, and that James was guilty of first-degree felony murder as a member and conspirator of the armed robbery.

18-21816

At the time of James' trial, Burton had already pleaded guilty to the same charges facing James and had, in some way, implicated James within a post-arrest, 180-page confession. The State planned to introduce this confession through Burton's testimony at James' trial. Both parties anticipated Burton would refuse to testify on the stand, and the defense objected to Burton being called to the stand in the presence of the jury on the grounds that Burton's silence in prison blues would unduly prejudice the defendant without opportunity for cross-examination. Based on this objection, counsel for both parties and the district court discussed the matter outside the presence of the jury on three separate occasions, and the district court set parameters for the testimony.

When Burton took the stand he respectfully "refuse[d] to testify," as expected. The State asked only a few general questions prior to handing the uncooperative witness back to the court. The court then confirmed with Burton that he would refuse to testify and admonished Burton that he did not have the right to invoke the Fifth Amendment privilege because he had already been convicted. Defense counsel then asked Burton one question to which Burton refused to respond. Per the State's request, the district court then took judicial notice of the fact Burton was present in prison blues, at which point Burton's testimony concluded.

Unable to question Burton about his statement to police, the State proceeded to establish a connection between Burton and James through its remaining evidence, notably: (1) a recorded jail call between Burton and his girlfriend that referenced James; (2) detective testimony referencing Burton's confession; (3) James' voluntary police interrogation during which detectives referenced Burton's prior statements; and (4)

testimony by potential accomplices identifying James.[1] James was subsequently convicted and now appeals that conviction.

## DISCUSSION

On appeal, James argues twelve procedural issues and requests reversal of his conviction and retrial. He argues that: (1) the district court erred by permitting his alleged co-conspirator, Burton, to testify despite knowing Burton would refuse to answer any questions; (2) the district court abused its discretion by admitting Burton's jail call; (3) the district court abused its discretion when it denied his motion for a mistrial; (4) detective testimony regarding Burton violated his rights under the Confrontation Clause because it referenced statements made by Burton; (5) the district court erred in refusing to redact prejudicial statements from his interrogation; (6) his Sixth Amendment right to a public trial was violated by the judge's exclusion of his friends and family from a portion of voir dire; (7) he was convicted pursuant to uncorroborated accomplice testimony; (8) the witness identifications of him were obtained through impermissibly suggestive police procedures;[2] (9) the State's superimposition of "guilty"

---

[1]The parties know the remaining facts, witnesses, and evidence of the case and we do not restate them here except as necessary for analysis.

[2]"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Odoms v. State*, 102 Nev. 27, 31, 714 P.2d 568, 570 (1986) (quoting *Coats v. State*, 98 Nev. 179, 643 P.2d 1225 (1982)). After reviewing the record and the parties' arguments, we find the pretrial identification procedures were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and "the weight and credibility of [the] identification testimony" was appropriately

 

over his photo during closing arguments affected his right to a fair trial; (10) the State engaged in prosecutorial misconduct warranting reversal;[3] (11) the weight of the evidence was insufficient to support a guilty verdict;[4] and (12) cumulative error entitles him to reversal.[5]

left within "the province of the jury" and thus the conviction should not be overturned on this basis. *Jones v. State*, 95 Nev. 613, 617, 600 P.2d 247, 250 (1979).

[3]In determining whether prosecutorial misconduct has deprived a defendant of a fair trial, this court inquires as to "whether the prosecutor's statements so infected the proceedings with unfairness as to make the results a denial of due process." *Rudin v. State*, 120 Nev. 121, 136, 86 P.3d 572, 582 (2004) (internal quotation omitted). A defendant is constitutionally entitled to a fair, not a perfect, trial. *Id.* After reviewing the record and parties' arguments, we hold the prosecution acted properly throughout trial and did not engage in conduct that deprived the defendant of a right to fair trial.

[4]The standard of review for sufficiency of the evidence upon appeal is whether the jury, acting reasonably, could have been convinced of the defendant's guilt beyond a reasonable doubt. *Edwards v. State*, 90 Nev. 255, 258-59, 524 P.2d 328, 331 (1974). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) (internal quotation omitted). After viewing all the evidence presented at trial in the light most favorable to the prosecution, we hold that a rational trier of fact could have found James guilty of all the charged crimes beyond a reasonable doubt.

[5]"The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though [the] errors are harmless individually." *Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002). However, as we hold there was no more than one harmless error committed at trial, we further hold there was no cumulative error warranting reversal.

James' primary argument on appeal is that the district court abused its discretion and impeded his constitutional rights by allowing the incarcerated Burton on the witness stand despite suspecting Burton would refuse to testify. James argues that Burton's silence prejudiced him without an ability to cross-examine, thus violating his due process rights under the Sixth Amendment Confrontation Clause. Additionally, subsequent to Burton's silence on the stand, the district court then admitted the jail call, detective testimony, and James' recorded interrogation, all of which either contained or referenced Burton's prior out-of-court statements. James argues that the district court abused its discretion by admitting this evidence and, again, that this evidence prejudiced him without an ability to cross-examine Burton.

*Issues on appeal implicating the Confrontation Clause*

The Sixth Amendment Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Giles v. California,* 554 U.S. 353, 357-58 (2008). For example, a defendant's Sixth Amendment right to confrontation is violated when a non-testifying co-defendant's confession, implicating the defendant, is admitted into trial. *Bruton v. United States,* 391 U.S. 123, 127 (1968). This confession can be an in-court or prior out-of-court statement. *See Crawford v. Washington,* 541 U.S. 36, 50-51 (2004). Additionally, "non-testifying" can mean a co-defendant who takes the stand in a criminal trial but who refuses to testify based on a real or perceived right to a Fifth Amendment privilege. *Silva v. State,* 113 Nev. 1365, 1368, 1373, 951 P.2d 591, 593, 596 (1997). For example, in *Silva v. State,* this court held that it was unfairly prejudicial to the defendant for the co-defendant, who, after admitting the charged crime on the witness stand, refused to answer any more questions regarding the defendant's

Supreme Court
of
Nevada

(O) 1947A

involvement and was held in contempt seventeen times in front of the jury. *Id.*; *see also Douglas v. Alabama*, 380 U.S. 415, 420 (1965) (holding that it was a violation of a defendant's rights under the Confrontation Clause when the co-defendant was called to the stand and refused to respond and the prosecutor then treated the co-defendant as a hostile witness and read his confession, which implicated the defendant, into the record). There, this court reasoned that, following the co-defendant's confession, "inferences from a [co-defendant's] refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Silva*, 113 Nev. at 1372, 951 P.2d at 596 (quoting *Douglas*, 380 U.S. at 420).

*Silva* and *Douglas* share a common thread: the co-defendant's confession is implicitly or explicitly linked to the defendant by the co-defendant's silence, and the defendant thus has no ability to cross-examine that confession. Additionally, this prejudice is so great, the United States Supreme Court has held it cannot be remedied through jury instruction. *Bruton*, 391 U.S. at 136-37. However, the holding in *Bruton* is narrow, and where "the confession was not incriminating on its face, but became so only when *linked with evidence introduced later at trial,*" *Bruton* does not apply. *Richardson v. Marsh*, 481 U.S. 200, 201 (1987) (emphasis added). In *Richardson*, the U.S. Supreme Court refused to extend *Bruton* to include situations in which all references to the defendant are omitted from the confession, but other evidence at trial nonetheless links the defendant to the confession. *See id.*

This court generally reviews a court's evidentiary rulings for an abuse of discretion. *See Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). However, whether a defendant's Confrontation Clause rights

were violated is subject to de novo review. *Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009).

*The district court did not abuse its discretion by allowing Burton to testify*

Prior to testifying, Burton had already pleaded guilty to the charges that would have been implicated by his testimony. The Fifth Amendment privilege does not apply where a co-defendant or co-conspirator has pleaded guilty but has not yet been sentenced. *Jones v. State*, 108 Nev. 651, 656-57, 837 P.2d 1349, 1352-53 (1992). Thus, the State had the right to subpoena the witness and compel him to testify. However, as indicated in *Douglas* and *Silva*, a defendant can still be prejudiced and his right to cross-examination violated even where the co-defendant refuses to testify without the Fifth Amendment privilege to do so. *Silva*, 113 Nev. at 1372, 951 P.2d at 596 (quoting *Douglas*, 380 U.S. at 420).

Nevertheless, we hold that James was not unduly prejudiced by Burton's time on the witness stand. Here, the district court carefully considered *Douglas* and *Silva* and limited Burton's testimony only to what it determined was necessary to meet the competing rights of the State and the defendant. The State argued that it had the right to call Burton to the stand because he had no Fifth Amendment privilege and because the State had a 180-page statement from Burton, allegedly implicating James, which Burton could have chosen to divulge or deny once he was placed under oath before the jury. In contrast, James argued that he could be prejudiced by Burton's silence on the stand, in prison blues, with no remedy to cross-examine Burton, "add[ing] critical weight to the prosecution's case." *Silva*, 113 Nev. at 1373, 951 P.2d at 596 (quoting *Douglas*, 380 U.S. at 420).

Both parties were correct in their arguments and, in balancing these competing rights and the fact that the district court was not certain

SUPREME COURT OF NEVADA

(O) 1947A

Burton would refuse to testify, we hold that the district court acted properly, specific to the unique facts of this case. Here, the district court limited the direct examination to a few non-substantive questions—just enough to ensure Burton would refuse to testify, did not hold Burton in contempt before the jury, and did not allow the State to introduce Burton's confession. These precautions by the district court distinguish this matter from both *Douglas* and *Silva*. Thus, we hold that Burton's time on the stand did not implicate *Douglas* or *Silva* where the jury was not presented with the content of Burton's confession.

Rather, the fact that Burton was currently incarcerated, had spoken to the police about the crime in question and had been arrested, and that he now refused to testify despite lack of privilege to do so, constituted the type of "linkage" evidence the U.S. Supreme Court has indicated falls outside the scope of the *Bruton* exception. *See Richardson,* 481 U.S. at 201. Nothing about Burton's time on the stand was facially incriminating, rather, it "became so only when linked with evidence introduced later at trial." *Id.* The U.S. Supreme Court has expressly overruled the "contextual implication" doctrine, which would view the prejudicial effect of a co-defendant's testimony after all of the evidence has been presented at trial. *Id.* at 209-11. No doubt James was prejudiced to some degree by Burton's time on the witness stand. However, we hold that his Confrontation Clause rights were not violated and that the district court did not abuse its discretion by determining that the probative value of Burton's potential testimony offered to the State was not substantially outweighed by the danger of unfair prejudice. *See Bigpond v. State,* 128 Nev. 108, 116-17, 270 P.3d 1244, 1249 (2012).

*Detective testimony referencing Burton's out-of-court statements did not violate James' rights under the Confrontation Clause and was otherwise admissible*

Where testimonial evidence is at issue, the Sixth Amendment "demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68. "Statements taken by police officers in the course of interrogations are . . . testimonial." *Id.* at 52. Here, Burton was unavailable due to his refusal to testify and his prior statement to police was clearly testimonial.

Moreover, the Confrontation Clause is violated when a detective testifies regarding the testimonial statements made to him and where a juror "could determine the critical content of the out-of-court statement[s]." *Ocampo v. Vail*, 649 F.3d 1098, 1108-09 (9th Cir. 2011) ("*Crawford* was emphatic that questioning an in-court witness who relates the statements of an absent witness is no substitute for the direct confrontation guaranteed by the Sixth Amendment . . . ."). This court has interpreted *Ocampo* to mean that a police officer does not have to directly quote the witness testimony in order to implicate the Confrontation Clause, *Santana v. State*, Docket No. 65514 (Order of Reversal and Remand, May 18, 2015); however, the paraphrase must constitute hearsay and must provide a likely or "inescapable inference regarding the substance of the witnesses' statement," *Shaw v. State*, Docket No. 55887 (Order of Affirmance, Dec. 27, 2011). While testimony offered to describe the course of an investigation that is not offered to show the truth of the matter asserted may be admitted as non-hearsay, *Wallach v. State*, 106 Nev. 470, 473, 796 P.2d 224, 227 (1990), evidence that serves only to identify the defendant as the guilty party violates the Confrontation Clause and cannot be admitted as course-of-investigation testimony, *Taylor v. Cain*, 545 F.3d

SUPREME COURT
OF
NEVADA

(O) 1947A

327, 335 (5th Cir. 2008). Course-of-investigation evidence generally applies to permit testimony that bridges gaps in trial testimony that would otherwise confuse or mislead the jury. *Jones v. Basinger*, 635 F.3d 1030, 1046 (7th Cir. 2011).

We hold that the detective testimony during James' interrogation did not deprive him of his Sixth Amendment right to confrontation because it constituted proper course-of-investigation evidence. There is no doubt Burton's original statement to police would have been testimonial and an irremediable violation of the Sixth Amendment had portions of it been admitted. However, Burton's statement provided the sole evidence that led police to investigate James as a suspect. Here, the jury knew that Burton had given a statement to police, but was not informed of the contents of the statement, other than that it led police to James and two other individuals. Viewing the evidence as a whole, the statements referencing Burton did provide a "critical link" associating James and Burton. This was essential to the prosecution's theory of the case and essential to provide the only available evidence that detectives did not just select James as a suspect out of thin air. Additionally, the statements did not implicate any direct evidence linking James as the shooter or speak to the substance of James' involvement in the crime. Having determined the statement did not violate James' Sixth Amendment right to confrontation, we additionally hold the district court did not otherwise abuse its discretion by admitting that testimony.

Moreover, we hold that the detective statement referencing Burton in James' voluntary interrogation also did not constitute testimonial hearsay implicating the Confrontation Clause. The State argues that the detective's statement was necessary to provide context for James' assertion

(O) 1947A

that he did not know Burton, an assertion which prompted detectives to place him under arrest. A detective's statement that is meant to show the falsity of the defendant's statement is necessarily presented to prove the truth of the matter asserted; however, as there was no other evidence available to demonstrate why the police officers believed they had probable cause to arrest James during the interrogation, we hold that in this very limited circumstance the district court did not err by declining to redact the statement.

*The district court did not abuse its discretion by admitting the jail call between Burton and his girlfriend*

James argues the jail call between Burton and his girlfriend Drew was testimonial in nature because the parties reasonably had to know it was recorded, thus implicating the Confrontation Clause. *See Harkins v. State*, 122 Nev. 974, 979, 986, 143 P.3d 706, 709, 714 (2006) (holding where a statement is not testimonial, it does not violate the confrontation right and "when determining whether a statement is testimonial, it is necessary to look at the totality of the circumstances surrounding the statement"). We find this argument unpersuasive. James himself notes that a testimonial statement is one that is made with the primary purpose of providing evidence relevant to a later criminal prosecution. Here, the jail call was between Burton and his girlfriend, after Burton had already pleaded guilty to his charged crimes. Additionally, the phone excerpt revealed Burton's decision to refuse to testify against James, theoretically a statement against his own interest where Burton did not have a Fifth Amendment privilege. Viewing the totality of the circumstances, there is no compelling evidence that the primary purpose of the phone call was to produce evidence for either James' or Burton's criminal proceedings. Accordingly, we hold the jail call was not testimonial in nature and did not implicate the

Confrontation Clause. *See id.*, 143 P.3d at 709, 714 (holding totality of the circumstances includes who is talking and why the parties are having the conversation).

Moreover, we hold that the district court acted within its discretion by admitting the phone call as evidence impeaching Drew. *See Summers v. State*, 102 Nev. 195, 201, 718 P.2d 676, 680-81 (1986); *and LVMPD v. Yeghiazarian*, 129 Nev. 760, 765, 312 P.3d 503, 507 (2013) (indicating that a district court errs by admitting evidence that violates the Confrontation Clause, but, absent a constitutional violation, a district court's admission of evidence is reviewed for an abuse of discretion). Drew first testified she had never had a conversation with Burton about James and the phone call contained statements made by Drew which contradicted that previous testimony. A district court has less discretion to curtail impeachment where potential bias is at issue, *see Leonard v. State*, 117 Nev. 53, 72, 17 P.3d 397, 409 (2001), and here, the district court saw Drew's false testimony as evidence of impeachment, bias, and motive to lie. Additionally, the district court did not consider the impeachment to be on a collateral matter when one of the main issues in the case was whether Burton and James were connected in this crime. Further, the district court expressly found that Burton's statements in the phone call were not admitted for the truth of the matter asserted but as impeachment evidence of Drew and for their effect on her as a listener. Finally, to mitigate the prejudicial effect the phone call may have had on James, the district court admonished the jury and issued an instruction that the phone call could not be used as substantive evidence, only as impeachment evidence against Drew. As

such, we hold the district court did not abuse its discretion by admitting the jail call.[6]

*Additional issues on appeal*

> *The district court did not abuse its discretion by allowing corroborated accomplice testimony*

James argues witnesses Shaw and Boyd were James' accomplices and their testimony was not corroborated by independent evidence as required by NRS 175.291. "Upon a trial of the case the jury is the judge of the credibility of the witnesses, and the question of whether or not the witness was in fact an accomplice can be submitted to the jury upon proper instructions." *Cutler v. State*, 93 Nev. 329, 334, 566 P.2d 809, 812 (1977). Here, the district court provided the jury with instructions regarding the credibility of witness testimony, and the law regarding accomplices and the necessity of corroboration, and "there [was] sufficient evidence in the record to corroborate" Shaw and Boyd's testimony. *See Evans v. State*, 113 Nev. 885, 891, 944 P.2d 253, 257 (1997) ("Corroborative evidence need not in itself be sufficient to establish guilt" but "must independently connect the defendant with the offense." (internal quotations omitted)). The evidence without Shaw and Boyd's testimony may not alone establish James' guilt beyond a reasonable doubt; however, we hold that

---

[6]James additionally argues the district court abused its discretion by denying his motion for mistrial based on the unfair prejudice caused by admission of the jail call. A denial of a motion for mistrial is reviewed for abuse of discretion. *Parker v. State*, 109 Nev. 383, 388-89, 849 P.2d 1062, 1066 (1993). Here, the record shows the district court acted in a reasoned, not arbitrary or capricious, manner by admitting the jail call and denying the defendant's request for mistrial. As we hold there was no constitutional violation in admitting the jail call, there was no abuse of discretion in denying the motion for mistrial.

while Shaw and Boyd may have been accomplices for purposes of NRS 175.291, the jury was adequately instructed on accomplice testimony and Shaw and Boyd's testimony was corroborated with independent evidence linking James to the offense.

*The district court likely violated James' Sixth Amendment right to a public trial but such error was harmless*

The district court erred by removing James' friends and family from the courtroom during a portion of voir dire without adequately articulating on the record "any specific threat or incident" motivating the closure beyond "[t]he generic risk of jurors overhearing prejudicial remarks." *Presley v. Georgia*, 558 U.S. 209, 215 (2010). However, the defense did not object and we hold such an error did not seriously affect James' substantial rights. *Jeremias v. State*, 134 Nev., Adv. Op. 8, ___ P.3d ___ (2018) (holding that excluding the defendant's family members from voir dire for a brief period is harmless error where the defense makes no objection and appellant cannot demonstrate prejudice).

*The prosecutor's use of the word "guilty" on a photo in its closing PowerPoint did not impede James' right to a fair trial*

James argues that the State affected his right to a fair trial by superimposing the word "guilty" over his photo in the closing argument PowerPoint. This court has held, in the context of opening statements, that "a PowerPoint may not be used to make an argument visually that would be improper if made orally." *Watters v. State*, 129 Nev. 886, 890, 313 P.3d 243, 247 (2013). However, we declined to find "[i]mpropriety and prejudice" when the State used a PowerPoint slide with "guilty" superimposed on the defendant's photo during closing arguments and the slide was shown once and for a short time. *Artiga-Morales v. State*, 130 Nev. 795, 799, 335 P.3d 179, 182 (2014). Here, the single PowerPoint slide, shown once during

SUPREME COURT
OF
NEVADA

(O) 1947A

during closing argument, coupled with the State's statement of guilt, appears to be appropriate argument that the State has met its burden. One such slide, viewed in the context of the closing argument and the PowerPoint as a whole, is "consistent with the scope and purpose" of closing arguments and did not impair James' right to a fair trial. *See Watters*, 129 Nev. at 890, 892-93, 313 P.3d at 247-49.

For the foregoing reasons, we

ORDER the judgment of the district court AFFIRMED.

_____ , J.
Pickering

_____ , J.
Gibbons

_____ , J.
Hardesty

cc:   Hon. Douglas W. Herndon, District Judge
      Law Offices of Martin Hart, LLC
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk