137 Nev., Advance Opinion *50*

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DAVID JAMES BURNS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 80834

**FILED**

SEP 23 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit robbery, conspiracy to commit murder, burglary while in possession of a firearm, two counts of robbery with the use of a deadly weapon, murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, and battery with the use of a deadly weapon. Eighth Judicial District Court, Clark County; J. Charles Thompson, Senior Judge.

*Affirmed.*

Resch Law, PLLC, dba Conviction Solutions, and Jamie J. Resch, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Pamela C. Weckerly and Alexander G. Chen, Chief Deputy District Attorneys, Clark County,
for Respondent.

_____

BEFORE THE SUPREME COURT, HARDESTY, C.J., STIGLICH and SILVER, JJ.

21-27485

*OPINION*

By the Court, STIGLICH, J.:

In this appeal, we consider the scope of a mid-trial waiver of appellate rights. During a capital trial, appellant David Burns stipulated to a sentence of life without the possibility of parole if the jury found him guilty and to waive his right to appeal issues "stemming from the guilt phase of the trial." In exchange, the State agreed to withdraw its notice of intent to seek the death penalty. The jury found Burns guilty, and the court, sitting without a jury, sentenced him to life without the possibility of parole. He now appeals, raising errors related to a pretrial motion to suppress, jury selection, closing arguments, jury deliberations, and sentencing.

We hold that Burns did not waive any errors that occurred during closing arguments because oral representations made to the court and reflected in the record indicate that the parties did not intend to extend the waiver to such errors. Further, we hold that Burns did not waive any errors that occurred during sentencing because sentencing was clearly not part of "the guilt phase of the trial." It is less clear on these facts whether voir dire is encompassed within "the guilt phase of trial," and so we construe the waiver against the government and conclude that Burns did not waive the claim relating to jury selection. But we hold that Burns waived the other alleged errors, even those that may have arisen after the agreement was executed. While unrelated to the appellate waiver portion of his agreement, we also conclude that Burns' stipulation to the sentence the court imposed precludes his argument on appeal that the sentence is unreasonable and unconstitutional. Because we conclude that there was no reversible error in jury selection or closing arguments, we affirm the judgment of conviction.

Supreme Court
OF
Nevada

(O) 1947A

## BACKGROUND

Appellant David Burns was charged with conspiracy to commit robbery, conspiracy to commit murder, burglary while in possession of a firearm, two counts of robbery with the use of a deadly weapon, murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, and battery with the use of a deadly weapon. The charges stemmed from a home robbery in which a woman was shot and killed and her 12-year-old daughter was shot but survived. Although several individuals were involved, Burns was prosecuted as the shooter. The State filed a notice of intent to seek the death penalty, and the case proceeded to a bifurcated jury trial with a guilt phase and a penalty phase.

On the twelfth day of trial, Burns and the State presented a Stipulation and Order (Agreement) for the district court's approval. This Agreement contained two related provisions. In the first, Burns agreed to waive a penalty hearing before the jury and stipulated to a sentence of life without the possibility of parole if the jury found him guilty of first-degree murder. In the second, the State agreed to withdraw the notice of intent to seek the death penalty in exchange for Burns' waiver of "all appellate rights stemming from the guilt phase of the trial." When the parties presented the Agreement to the district court, the State was still presenting its case-in-chief. Burns' codefendant did not waive his appellate rights, and Burns' attorneys told the court that the codefendant's presence would provide a safeguard against future misconduct despite Burns' appeal waiver.

During discussion of the Agreement, Burns' attorney explained that "for purposes of further review down the road, we are not waiving any potential misconduct during the closing arguments. We understand that to be a fertile area of appeal." The State did not contest that statement and

implied that the defense attorney's recounting of the Agreement was correct. The district court approved the Agreement.

The jury found Burns guilty on all charges. Burns filed a sentencing memorandum detailing a report of mitigating factors, including Burns' age at the time of the crime, a diagnosis of fetal alcohol syndrome, and other cognitive issues. The district court sentenced Burns to life without the possibility of parole for the first-degree murder conviction.

Burns' counsel declined to file a direct appeal because of the waiver, asserting that Burns would have a better likelihood of success in a postconviction habeas proceeding. However, on appeal from a district court order denying Burns' subsequent postconviction habeas petition, this court held that Burns' trial counsel was ineffective for not filing a direct appeal when Burns desired to do so. *See Totson v. State*, 127 Nev. 971, 979, 267 P.3d 795, 801 (2011) ("[T]rial counsel has a duty to file a direct appeal when the client's desire to challenge the conviction or sentence can be reasonably inferred from the totality of the circumstances . . . ."). Accordingly, Burns was permitted to file this untimely direct appeal under NRAP 4(c). *Burns v. State*, Docket No. 77424 (Order Affirming in Part, Reversing in Part and Remanding, Jan. 23, 2020).

## DISCUSSION

In this appeal, we consider the scope of Burns' mid-trial waiver of appellate rights and then the merits of the nonwaived claims. The State contends that Burns waived all the claims brought in this appeal, and Burns disagrees. Burns' claims on the merits include error in admitting evidence, a wrongly denied *Batson*[1] objection, prosecutorial misconduct, error in

---

[1]*Batson v. Kentucky*, 476 U.S. 79 (1986).

allowing the jury to review video of trial testimony, and an unreasonable and unconstitutional sentence.

*Burns' waiver covered all allegations of error except those related to voir dire, closing arguments, and sentencing*

The State claims that Burns waived the right to appellate review of *every* error he raises in this appeal because they all fall within the scope of "the guilt phase of the trial" referenced in the Agreement. In contrast, Burns argues that "the guilt phase of the trial" only refers to the State's case-in-chief.[2] Burns does not challenge the validity of the appeal waiver in this case, only its scope.

This court has held that contract principles apply when analyzing a written guilty plea agreement. *See, e.g., State v. Crockett*, 110 Nev. 838, 842, 877 P.2d 1077, 1079 (1994). The same principles apply here. Although the Agreement at issue did not include a guilty plea, it is a contract to the same extent as a written plea agreement. Similar to a written guilty plea agreement, the Agreement here involved a bargained-for exchange between a defendant and the State, with both parties relinquishing a known right. Applying contract principles, we must construe the Agreement from its plain language and enforce it as written.

_____

[2]In addition, Burns argues that this court's decision in his postconviction appeal determined the scope of this appeal by finding that counsel was ineffective for not filing a direct appeal. Burns incorrectly reads our prior decision as if we considered the waiver's scope. We did not. Our prior decision simply concluded that Burns' counsel had a duty to file the requested direct appeal regardless of the waiver. *Cf. Garza v. Idaho*, ___ U.S. ___, ___, 139 S. Ct. 738, 747 (2019) (holding that, despite an appeal waiver, an attorney was ineffective for refusing to file an appeal upon the defendant's request). We said nothing about what issues, if any, Burns could raise in a direct appeal given the waiver.

*See Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 776, 121 P.3d 599, 603 (2005) ("[W]hen a contract is clear on its face, it 'will be construed from the written language and enforced as written.'" (quoting *Ellison v. Cal. State Auto. Ass'n*, 106 Nev. 601, 603, 797 P.2d 975, 977 (1990))). But any ambiguities must be construed against the State. *See United States v. Under Seal*, 902 F.3d 412, 418 (4th Cir. 2018); *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003).

> The Agreement stated as follows:
>
> [T]he parties hereby stipulate and agree to waive the separate penalty hearing in the event of a finding of guilt on Murder In the First Degree and pursuant to said Stipulation and Waiver agree to have the sentence of LIFE WITHOUT THE POSSIBILITY OF PAROLE imposed by the Honorable Charles Thompson, presiding trial judge.
>
> FURTHER, in exchange for the State withdrawing the Notice of Intent to Seek the Death Penalty, Defendant agrees to waive all appellate rights stemming from the guilt phase of the trial.

Although the Agreement does not explain what constitutes "the guilt phase of the trial," this phrase is typically used to distinguish between the parts of a bifurcated criminal trial when guilt is determined versus when a sentence is determined. "The first phase of a bifurcated capital case may be referred to as the 'guilt phase' as a convenient abbreviation, rather than using awkward terms such as the 'guilt or innocence phase' or 'determination of guilt or innocence' phase." *State v. Mason*, 694 N.E.2d 932, 948 (Ohio 1998); *see also* NRS 175.552(1) (providing that guilt phase and penalty phase in capital cases are separate proceedings for murder of the first degree); *Harte v. State*, 132 Nev. 410, 411, 373 P.3d 98, 99-100 (2016) (distinguishing the "guilt phase of trial" and the "penalty hearing"

when discussing admissibility of certain forms of evidence). It is fairly clear when the guilt phase of a trial ends—when a verdict is returned as to the defendant's guilt. Thus, Burns' claim on appeal that his sentence was unconstitutional is not waived by this provision, since sentencing occurred after the guilt phase of the trial finished.

It is much less clear when the guilt phase of a trial *begins*. Does it begin with the swearing in of the venire from which the jury is selected or the swearing in of the impaneled jurors? *Black's Law Dictionary* defines "guilt phase" as "[t]he part of a criminal trial during which the fact-finder determines whether the defendant committed a crime." *Guilt Phase, Black's Law Dictionary* (11th ed. 2019). That definition contemplates the fact-finder already being in place when the guilt phase begins. In jury trials, the fact-finder is the impaneled jury—which categorically does not exist until voir dire is completed. This suggests that the guilt phase begins after voir dire. Other authority is split about whether voir dire is part of the trial or an event that occurs pretrial.[3]

"Generally speaking, a plea agreement or other contract is ambiguous if it is reasonably susceptible of two meanings." *Under Seal*, 902

---

[3]*Compare State v. Melendez*, 244 So. 2d 137, 139 (Fla. 1971) ("It is settled law that trial begins when the selection of a jury to try the case commences."), *with State v. White*, 972 N.E.2d 534, 541 (Ohio 2012) ("[V]oir dire is not a substantive part of trial; rather, it is a mechanism to seat an impartial jury so that the due process rights of a defendant are protected.").

Under the federal Speedy Trial Act, "voir dire marks the technical commencement of the trial, [but] the strictures of the Speedy Trial Act are not fully satisfied by mere technical commencement." *United States v. Stayton*, 791 F.2d 17, 19 (2d Cir. 1986). But, for double jeopardy purposes, "jeopardy attaches [in a jury trial] when a jury is empaneled and sworn." *Serfass v. United States*, 420 U.S. 377, 388 (1975).

F.3d at 419. Therefore, we are not tasked today with deciding once and for all when the guilt phase of a trial begins. That the answer is unclear leads us to conclude that the Agreement in this case is ambiguous in that respect. Protection of defendants' rights when interpreting these kinds of bargains requires us to construe this ambiguity in the defendant's favor. For purposes of the issue before us today (the interpretation of the Agreement), we conclude that Burns' *Batson* claim is outside the scope of his waiver.

So, we necessarily reject Burns' argument that "the guilt phase of the trial" referred only to the State's case-in-chief and decline to adopt the State's argument that voir dire is categorically within "the guilt phase of the trial." In the circumstances presented here, "the guilt phase of the trial" in the Agreement's waiver provision encompassed Burns' claims stemming from every part of the proceedings after the jury was impaneled up until the verdict was returned.

Under that definition, the appeal waiver in the Agreement includes closing arguments. But, during a discussion on the record regarding the Agreement, Burns' counsel muddied the waters by stating that Burns was not waiving appellate review of any misconduct that might occur during closing arguments:

> I believe that states the agreement, other than there is a proviso that we, for purposes of further review down the road, we are not waiving any potential misconduct during the closing statements. We understand that to be a fertile area of appeal.

The State did not dispute defense counsel's representation that Burns intended to reserve the right to appellate review of any errors during closing arguments. Under the circumstances presented, we will give effect to

Burns' oral reservation of the right to appellate review of any misconduct during closing arguments of the guilt phase of the trial.[4]

With this understanding of the appeal waiver's scope, we now consider whether it includes the claims Burns brings related to a motion to suppress evidence and jury deliberations. We conclude that it does.

Although the district court denied the motion to suppress evidence before the trial started, Burns is actually challenging the admission of that evidence during the guilt phase of the trial. Any error in denying the motion to suppress could not have prejudiced Burns until the subject evidence was admitted during the guilt phase of the trial. Therefore, any right to challenge the admission of this evidence "stemmed from" the guilt phase, and Burns waived his right to appellate review of the district court's decision.

Finally, we conclude that the appeal waiver also includes the alleged error during deliberations, given that the deliberations preceded the verdict as to Burns' guilt. But this alleged error is unique among the remaining issues Burns raises because it occurred *after* the Agreement was entered. As the jury was deliberating days after Burns signed the Agreement, this issue highlights the prospective aspect of Burns' appeal waiver—it included appellate review of errors that might happen after the Agreement was entered.

The prospective waiver of the right to appellate review raises some concerns because when a defendant agrees to such a waiver, he or she

---

[4]We note that NRS 174.035(3), which provides that a reservation of the right to appellate review of an adverse pretrial decision must be in writing, does not apply here because the Agreement does not involve a plea of guilty, guilty but mentally ill, or nolo contendere.

SUPREME COURT
OF
NEVADA

(O) 1947A

cannot know what errors may occur in subsequent proceedings. *See generally United States v. Teeter*, 257 F.3d 14, 21 (1st Cir. 2001) ("The basic argument against presentence waivers of appellate rights is that such waivers are anticipatory: at the time the defendant signs the plea agreement, she does not have a clue as to the nature and magnitude of the sentencing errors that may be visited upon her."). Nonetheless, the weight of authority, with some narrow exceptions, bends toward enforcing knowing and voluntary waivers of the right to appeal, even if it means barring appellate review of errors arising after the waiver is entered.[5] Some appellate courts, however, will refuse to honor a prospective appeal waiver that is knowingly and voluntarily entered "if denying a right of appeal would work a miscarriage of justice." *Id.* at 25; *see also United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004); *Andis*, 333 F.3d at 889-92. Because that approach fairly balances the interests in enforcing valid agreements and remedying injustices that arise after entry of a prospective

---

[5]*See United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (enforcing prospective appeal waivers unless "1) a defendant's guilty plea failed to comply with Fed. R. Crim. P. 11; 2) the sentencing judge informs a defendant that she retains the right to appeal; 3) the sentence does not comport with the terms of the plea agreement; or 4) the sentence violates the law"); *United States v. Blick*, 408 F.3d 162, 172 (4th Cir. 2005) (enforcing prospective appeal waivers unless the defendants challenge "errors that the defendants could not have reasonably contemplated when the plea agreements were executed"); *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (enforcing prospective appeal waivers unless it would result in a miscarriage of justice); *Andis*, 333 F.3d at 891-92 (adopting a miscarriage of justice exception); *People v. Panizzon*, 913 P.2d 1061, 1071 (Cal. 1996) (enforcing prospective appeal waivers unless the appeal brings up sentencing issues "left unresolved by the particular plea agreement" when the sentencing occurred after the entry of a broad appeal waiver (emphasis omitted)).

appeal waiver, we adopt it. Applying that rule here, we find no danger of a miscarriage of justice if the appeal waiver is applied to the alleged error during jury deliberations. The alleged error occurred when the district court provided the jury a video recording of trial testimony at the jury's request and with defense counsel's consent. We find no miscarriage of justice on these facts, and as such, we will honor the prospective appeal waiver as to this claim.

Therefore, we conclude that the appeal waiver encompasses all of Burns' claims on appeal except those related to voir dire, closing arguments, and sentencing.

*The district court did not err in denying a* Batson *challenge during jury selection*

Burns alleges that the district court improperly denied his challenge to the State's peremptory removal of a prospective juror. An allegation that a peremptory challenge was used with racially discriminatory intent is governed by the three-step analysis adopted by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986).

> Under [that] jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*Purkett v. Elem*, 514 U.S. 765, 767 (1995).

We review the district court's ruling on a *Batson* challenge for an abuse of discretion. *Nunnery v. State*, 127 Nev. 749, 783, 263 P.3d 235, 258 (2011). Further, with respect to step three, "[t]he trial court's decision

SUPREME COURT
OF
NEVADA

(O) 1947A

on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Walker v. State*, 113 Nev. 853, 867-68, 944 P.2d 762, 771-72 (1997) (quoting *Hernandez v. New York*, 500 U.S. 352, 364 (1991)).

Burns objected to the State's use of a peremptory challenge to remove Juror 91. The juror did not identify his race, but he stated that he had emigrated from India. The district court took judicial notice that Juror 91 was a member of a cognizable group. The State alleges that Burns did nothing "more than point out that a member of a cognizable group was struck," which is insufficient to meet his burden at step one of the *Batson* analysis. *Williams v. State*, 134 Nev. 687, 690, 429 P.3d 301, 306 (2018). The district court indicated its agreement with the State, saying, "I don't think they've met their burden . . . ." But then, "in an abundance of caution," the court asked the State to "tell [the court] what race neutral reasons there are for excusing this particular juror?" We have noted that, when "the district court asked the State to provide its explanation for the peremptory challenge solely out of an abundance of caution after the court had determined that [the defendant] failed to make a prima facie case, the first step of the *Batson* analysis was not rendered moot." *Watson v. State*, 130 Nev. 764, 780, 335 P.3d 157, 169 (2014). As a result, we may examine whether Burns made a prima facie case of racial discrimination. We agree with the district court that he did not. Counsel offered no explanation besides anecdotes from other cases counsel had argued and references to other matters before this court. Burns' only point related to this specific juror was that the court had taken judicial notice that the juror was "Black." Burns did not meet the step one standard of a prima facie showing of discrimination.

Even if Burns *had* made such a showing, the State did give a race-neutral rationale based primarily on the juror's answers in a questionnaire regarding the death penalty. According to the district court, in the questionnaire, the juror had said, "Although I could not vote to impose the death penalty, I could vote to impose a sentence of life imprisonment without any possibility of parole in the proper circumstances." While the juror walked back this questionnaire answer on direct questioning, the district court found that the juror's answers to the death penalty questions were sufficient justifications so that there had not been a showing of purposeful racial discrimination under step three of the *Batson* analysis.

We conclude the district court did not abuse its discretion in overruling the *Batson* challenge to Juror 91. It does not appear that Burns met his burden under step one, and even if he had, the race-neutral explanation and the decision by the district court were sufficient, so we find no error in steps two or three.

*The State did not engage in reversible prosecutorial misconduct during closing arguments*

Burns claims that the State engaged in multiple instances of prosecutorial misconduct during its closing argument. In reviewing such claims, this court determines whether the prosecutor's conduct was improper and, if so, whether the conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). If the error is preserved and of a constitutional dimension—that is, if it involves impermissible comment on a constitutional right or has "so infected the trial with unfairness as to make the resulting conviction a denial of due process"—this court "will reverse unless the State demonstrates, beyond a reasonable doubt, that the error did not contribute to the verdict." *Id.* at 1189, 196 P.3d at 476-77 (internal quotation marks omitted). If the misconduct is not of a

SUPREME COURT
OF
NEVADA

(O) 1947A

13

constitutional dimension, this court "will reverse only if the error substantially affects the jury's verdict." *Id.* at 1189, 196 P.3d at 476.

*Referring to defense counsel*

The State opened its rebuttal argument with the following comment: "What happens in courthouses across America and what should be happening in this courtroom by a jury of 12 people is that it's a search for a truth. And before about 20 minutes ago, that would seem to be what we were all doing here for the last four weeks." By "20 minutes ago," the State was plainly referring to the defense's closing argument, thus implying that the defense was not engaged in "a search for a truth." Burns objected, saying "[t]hat's disparaging counsel," but the court overruled the objection. Burns alleges on appeal that this was reversible prosecutorial misconduct of a constitutional dimension.

This court has found that "[d]isparaging remarks directed toward defense counsel 'have absolutely no place in a courtroom, and clearly constitute misconduct.'" *Butler v. State*, 120 Nev. 879, 898, 102 P.3d 71, 84 (2004) (quoting *McGuire v. State*, 100 Nev. 153, 158, 677 P.2d 1060, 1064 (1984)). We have found such misconduct in quips made solely "to belittle defense counsel," *McGuire*, 100 Nev. at 158, 677 P.2d at 1064; when a prosecutor commented that defense counsel resorted to "smoke screens and flat-out deception," *Rose v. State*, 123 Nev. 194, 210, 163 P.3d 408, 419 (2007); and when a prosecutor made lengthy comments that defense counsel was trying to distract the jurors and to "market" them a "product," *Butler*, 120 Nev. at 897-98, 102 P.3d at 84. In contrast, the comment at issue here was not directed at opposing counsel with the purpose to belittle them; instead, it was focused particularly on the truth of the defense's version of events. Therefore, we conclude that the prosecutor's comments did not amount to misconduct.

*Referring to a nontestifying witness*

During his trial testimony, a detective referred to a statement made to him by a woman, Ulonda Cooper, who did not testify at trial. Defense counsel mentioned Cooper during his closing argument: "According to Detective Bunting, . . . that's what Ulanda [sic] Cooper told me; I never got her taped statement; that's what she told me and I just put it in there. Okay. . . . And you know what the most ironic thing about this, Ulonda Cooper was right." In rebuttal, the State said, "There's no connection whatsoever to him [another suspect] other than Ulonda Cooper. Oh, wait, we didn't hear from Ulonda Cooper. She's not a witness in this case. Did you assess Ulonda Cooper's credibility?" The defense objected and was overruled.

This court has held "it is generally improper for a prosecutor to comment on the defense's failure to produce evidence or call witnesses as such comment impermissibly shifts the burden of proof to the defense." *Whitney v. State*, 112 Nev. 499, 500, 502, 915 P.2d 881, 882, 883 (1996) (reversing a conviction after prosecutor "repeatedly call[ed] attention to the defense's lack of witnesses"). But when the comment goes to the defense's theory of what happened, it is permissible. For example, in *Rimer v. State*, we concluded that misconduct did not occur when the prosecutor pointed out that the defense failed to substantiate its theory that the defendants were sick and unable to commit the alleged crime. 131 Nev. 307, 331, 351 P.3d 697, 714 (2015). The comment at issue here is similar to that in *Rimer*. Burns' defense was, in part, that a coconspirator was the shooter. Burns' reference to Ulonda Cooper during his closing argument went to that theory. In these circumstances, the prosecution's response was a permissible comment on the evidence at hand and whether it substantiated the defense theory, not impermissible shifting of the burden of proof.

SUPREME COURT
OF
NEVADA

(O) 1947A

Therefore, we conclude that there was no prosecutorial misconduct as to the Ulonda Cooper comments.

*PowerPoint display*

The State used a PowerPoint presentation during its rebuttal closing argument. One slide contained an illustration purporting to set out facts that disprove any notion of coincidence, which both the State and Burns describe on appeal as "a circle of guilt." Defense counsel objected and was overruled.

This court has held that it was reversible error for the prosecutor, during opening statements, to display a defendant's booking photo overlaid with the word "GUILTY," while simultaneously urging the jurors orally to find the defendant guilty. *Watters v. State*, 129 Nev. 886, 891, 313 P.3d 243, 247-48 (2013). This court found that while the oral statement was permissible, the visual slide was not because it "directly declared Watters guilty." *Id.* at 891, 313 P.3d at 248. In doing so, we noted that making the improper argument visually (declaring a defendant guilty in an opening statement photo) was even more prejudicial than it would have been had it been made orally. *Id.* at 892, 313 P.3d at 248.

Here, the district court overruled the objection on the ground that the PowerPoint slide was used in closing argument, whereas the slide in *Watters* was used in an opening statement. We agree. *Watters* is limited to opening statements, where a prosecutor may not directly declare the defendant guilty. *See Artiga-Morales v. State*, 130 Nev. 795, 799, 335 P.3d 179, 182 (2014) (holding that the use of the defendant's photograph with the word "guilty" across the front was not error, in part because it was shown during closing arguments). And even if the district court erred, the slide alleging "a circle of guilt" did not make the proceedings so unfair as to be error of a constitutional dimension or substantially affect the verdict.

*Burns' agreement to a specific sentence precludes his arguments that the sentence was unreasonable and unconstitutional*

Although Burns' challenge to the life-without-parole sentence is not barred by the appeal waiver, it nonetheless is barred by his stipulation to that sentence as part of the Agreement. This court has not yet spoken to this threshold question: Can a defendant challenge a sentence that was agreed upon in a bargain with the State? Neither Burns nor the State addresses this question, although the State does point out that Burns "*agreed* to his sentence of life without the possibility of parole, but now complains it is unreasonable and unconstitutional."

Generally, "[w]hen a defendant pleads guilty and agrees to a specific sentence, he waives his right to challenge the propriety of his sentence." *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008). As discussed above, we see no reason to treat the Agreement entered here any differently than a plea agreement. We therefore conclude that because Burns received the benefit of his bargain—the stipulated-to sentence of life without the possibility of parole—he cannot challenge that sentence on appeal.

Even if we were to consider Burns' arguments about the sentence, they lack merit. "A sentence within the statutory limits is not cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience." *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (internal quotation marks omitted). Burns' sentence was certainly within the statutory limits, *see* NRS 200.030(4)(b)(1), and was not unreasonably disproportionate to his offense of murder with the use of a deadly weapon.

## CONCLUSION

Burns' mid-trial appeal waiver applied to the entirety of "the guilt phase of the trial," including all parts of the trial up to the jury's verdict as to his guilt. The language of the Agreement is ambiguous as to whether the guilt phase commenced before or after jury selection, so we construe the ambiguity in Burns' favor and consider his claim of error related to jury selection. The parties also carved out a limited exception to the appeal waiver, with Burns orally reserving his right to appellate review of misconduct during closing arguments and the State implicitly agreeing to that reservation. Therefore, the mid-trial appeal waiver covered all of Burns' claims raised in this appeal, except those regarding voir dire, closing arguments, and an unconstitutional and unreasonable sentence. We conclude that the prosecutorial-misconduct and *Batson* claims are substantively without merit. Further, since Burns agreed to a specific sentence as part of the Agreement and the district court imposed that sentence, he may not challenge the imposition of the agreed-upon sentence. On these bases, we affirm the judgment of conviction.

_____, J.
Stiglich

We concur:

_____, C.J.
Hardesty

_____, J.
Silver